[No. 28305. Department Two. August 4, 1941.]

ANDREW NELSON, *Appellant*, v. THE DEPARTMENT OF LABOR AND INDUSTRIES, *Respondent*, CROWN ZELLERBACH CORPORATION, *Respondent and Cross-appellant.*[1]

[1]Reported in 115 P. (2d) 1014.

*Harry Ellsworth Foster* and *Wright & Wright,* for appellant.

*Todd, Holman, Sprague & Allen (Thomas Todd,* of counsel), for respondent and cross-appellant.

*The Attorney General* and *J. A. Kavaney, Assistant,* for respondent.

SIMPSON, J.—Andrew Nelson was injured while engaged in an extrahazardous occupation May 1, 1933, and thereafter filed his claim for compensation with the department of labor and industries. At the time of the injury, claimant was measuring a felled tree for bucking when another tree fell on the one upon which he was standing. As he started to jump, the felled tree bounded and struck him, breaking his ankle and causing him to land upon the ground on his neck and the upper portion of his back. In the medical report the injury was described as "Potts fracture of right ankle. Internal dislocation and deformity." No mention was made of any other injury.

Claimant filed his claim for compensation May 12, 1933. October 24, 1933, the department closed the claim granting time loss to October 19, 1933, with six degrees permanent partial disability as final settlement. Subsequently, another claim was filed October 2, 1934. This set forth that claimant was suffering from a splinter infection of the left foot, received while em-

ployed by the Crescent Logging Co. This claim is important only because it was prosecuted along with the claim for the ankle injury and the claimed back injury. While hospitalized for the infected foot, claimant's doctor removed a piece of bone from his right foot, which operation was thereafter reported to the department.

December 22, 1934, the department received a letter from its Port Angeles office stating that claimant had orally complained that he had not heard "regarding compensation." No details were mentioned by him in his oral complaint. In response, the department, January 4, 1935, wrote claimant revealing the status of the claim for the accident of May 1, 1933, and the claim for the infected foot occurring September 15, 1934. It stated that they were continuing the claims closed in accordance with their previous orders.

February 7, 1935, Nelson petitioned the joint board for a rehearing in the following language:

"The grounds for this appeal are as follows: The Claimant was severely injured on May 1, 1933, in the course of his employment in an extra hazardous occupation for the Washington Pulp and Paper Corporation at Neah Bay, Washington; this injury was reported to and investigated by the Department of Labor and Industries and the claim was allowed and claimant was awarded five and one-half months time loss and six degrees permanent partial disability; in said accidental injury the claimant suffered a Potts fracture of his right ankle and very severe shock resulting from being thrown into the air and falling upon his back, shoulders and head; after said claim was closed a piece of bone was dislodged in said injured ankle and pushed out in such a way that claimant could not wear a boot and was seriously disabled; on or about September 24th, 1934 the aforesaid piece of bond was removed and the Claimant has been disabled at all times since said operative treatment from engaged in any gainful work and that said ankle condition has been alone sufficient to disable him, although during this period he has also been disabled as a result of an infection in his left foot;

*since said claim was closed claimant has suffered an increasing pain in his spine and head, dizziness and weakness in his back due to said injury and the fall upon his back, shoulder and head, said condition is caused solely by said injury and is becoming progressively worse and claimant is now permanently disabled from engaging in any gainful occupation as a result of said injury to his back and head."* (Italics ours.)

As far as the record discloses, this was the first time that the department was notified of any claim for injury to claimant's back. A rehearing was granted and testimony was thereafter taken, May 2, 1935. As a result thereof the supervisor was reversed and both claims were reopened. The supervisor then ordered that claimant be paid additional time loss on his original claim because of aggravation of the injury to his right ankle.

Claimant again petitioned the joint board for a rehearing. This was granted subject to making the petition more definite and certain. The record does not disclose whether this was ever done, though the hearing proceeded upon the showing made in the petition. By order of June 28, 1937, the joint board sustained the supervisor.

July 10, 1937, Nelson filed notice of appeal to the superior court. The employer was given leave to intervene. Objecting thereto, claimant petitioned this court for a writ of certiorari, which was denied. A trial was then had to a jury, resulting in a verdict favorable to claimant. Answering special interrogatories, the jury found that the workman was suffering from temporary total disability as a result of the accident of May 1, 1933.

Thereafter, motions for a new trial and judgment notwithstanding the verdict were interposed by the claimant and his employer. After a hearing upon the motion, the court set aside the verdict and remanded

the case to the department with directions to determine the extent of the disability to claimant's back. The claimant appealed and his employer cross-appealed.

Claimant contends that the court erred in setting aside the verdict and remanding the cause to the department with instructions to determine the extent of the disability to plaintiff's back and in refusing to enter judgment upon the verdict. Cross-appellant contends that the court erred in denying the motion for dismissal, in denying its motion for judgment n. o. v., and in entering judgment remanding the cause to the department of labor and industries.

Appellant maintains that the court erred in returning the claim to the department for further consideration, that he should have entered judgment upon the verdict. The thought of the trial court is reflected in a memorandum decision in which he states:

"It is apparent from the record that the real question submitted to the jury was whether the back injury claimed was the result of the original injury of May 1, 1933, and that this question has never been determined by the Supervisor at any time since the original injury was claimed.

" . . . I am of the opinion that the Superior Court is without jurisdiction to determine any question that has not been previously passed upon by the Supervisor. Apparently it is the law that the original determination of the question is the exclusive right of the Supervisor, and that in the event he refuses to decide, and this refusal is affirmed by the Board, then the Superior Court may ask the decision to be made. The jurisdiction of the court is appellate only and an original decision is required before it can be overruled or affirmed."

Cross-appellant contends that the present jury act, Rem. Rev. Stat. (Sup.), § 7697-2 [P. C. § 3488-21], Laws of 1939, chapter 184, p. 579, § 1, is inapplicable to the present proceedings. It argues that the act has

no retroactive effect, and that the verdict of the jury in this case was advisory only and that it is for the court to try the case *de novo* and determine the facts from the record.

It is the general rule that statutes have no retroactive effect unless the legislative intent is so expressed therein. *In re Cascade Fixture Co.*, 8 Wn. (2d) 263, 111 P. (2d) 991; *Layton v. Home Indemnity Co.*, *ante* p. 25, 113 P. (2d) 538.

The act in question was drawn to cover "all appeals." Consequently, "all appeals" includes those which were pending as well as appeals taken after the passage of the act. Thus, it was designed to apply to cases which at the time were pending before the department and to cases which would arise at a future time.

Assuming, however, that the act did not by its wording have a retroactive effect, it is apparent that it comes within the exception to the above general rule to which we have just referred. The exception is that an act has a retroactive application when it relates to practice, procedure, or remedies, and does not affect a contractual or vested right. *Duggan v. Ogden*, 278 Mass. 432, 180 N. E. 301, 82 A. L. R. 765; *Dickson v. Alabama Machinery & Supply Co.*, 18 Ala. App. 164, 89 So. 843; *Cavender v. Hewitt*, 145 Tenn. 471, 239 S. W. 767, 22 A. L. R. 755; *Laird v. Carton*, 196 N. Y. 169, 89 N. E. 822, 25 L. R. A. (N. S.) 189; *Spicer v. Benefit Ass'n of R. Employees*, 142 Ore. 588, 21 P. (2d) 187, 90 A. L. R. 517; *Lewis v. Pennsylvania R. Co.*, 220 Pa. St. 317, 69 Atl. 821, 13 Ann. Cas. 1142, 18 L. R. A. (N. S.) 279.

The first issue for our determination is whether or not the superior court possessed jurisdiction to hear and determine the question of appellant's back injury. This answer depends upon the further inquiry of

whether the department considered or had the opportunity to consider this question.

As a prefatory remark, it seems advisable to recall to mind that workmen's compensation acts are considered remedial in character, the provisions of which should be construed broadly and liberally in order to effectuate their purpose, which, among other things, is to benefit the working man. *Hilding v. Department of Labor & Industries,* 162 Wash. 168, 298 Pac. 321; *State ex rel. Crabb v. Olinger,* 196 Wash. 308, 82 P. (2d) 865; *Campbell v. Department of Labor & Industries,* 2 Wn. (2d) 173, 97 P. (2d) 642.

Our discussion of this issue will be divided into two parts: (1) notification of the back injury and compensation claim to the department, and (2) the opportunity of the supervisor to consider this claim.

The record discloses that the question of the injury to appellant was presented to the joint board in a communication dated February 7, 1935. In its "summary and finding of fact and order" made after the rehearing, the joint board reversed the supervisor and then stated:

"The joint board has, however, not considered the question of the alleged back injury as a result of the accident of May 1, 1933 for the reason that aggravation of disability resulting directly from the injury was proven by the claimant and therefore consideration of the back question was immaterial."

In making his allowance after receiving the above order, the supervisor stated:

". . . and that the question of the back injury is not before the supervisor at this time and is not given any consideration."

We fail to comprehend the position taken by the supervisor as expressed in his order of October 4, 1935, and by the joint board in thereafter sustaining the

supervisor. While Rem. Rev. Stat., § 7686 [P. C. § 3480], requires that a workman must file an application for compensation, together with a physician's certificate, with the department, it must be remembered that this is not a formal and highly technical requirement such as might apply to a pleading. As long as the writing filed with the department reasonably directs its attention to the fact that an injury, with its particulars, has been sustained and that compensation is claimed, the statute has been substantially complied with. In *Kaplan v. Kaplan Knitting Mills,* 248 N. Y. 10, 161 N. E. 204, the court aptly expressed the prevailing judicial attitude regarding workmen's compensation practice:

"The Workmen's Compensation Law was particularly framed to avoid legal terminology and the technicalities of law pleading. It was intended that the working people themselves could make and file these claims and give the notice of injury. The cost and expense of employing attorneys were to be avoided if possible. The act was for the benefit of the workingman and his family, not for the profession. The notice, therefore, of injury and the claim for compensation are sufficient when the facts of the injury are stated with reasonable certainty, and it is also reasonably to be inferred that a claim for compensation is being made."

In the case at bar, notice of the back injury and claim for compensation was first brought to the department's attention by appellant's letter of February 7, 1935, which petitioned the joint board for a rehearing as to the ankle injury. It will be observed that the italicized portions, together with the balance of the letter of February 7, 1935, state facts sufficient to apprise the department that an injury had been suffered and that compensation was being claimed. That the communication challenged the attention of the department, is clearly established by its medical report of July 25, 1935, part of which was devoted to appellant's

back injury, and by the testimony taken relative thereto at the rehearing.

We realize that the accompaniment of the notice and claim with the petition for rehearing is somewhat irregular from the prescribed orthodox procedure. However, we fail to see why this irregularity should militate against appellant's rights, especially when the department and cross-appellant have not been placed at a disadvantage. While not analogous to the factual situation at bar, the case of *Steffens Ice Cream Co. v. Jarvis,* 132 Okla. 300, 270 Pac. 1103, illustrates the liberality of the courts regarding irregularities in filing compensation claims. There the employer appealed from an award of the state industrial commission on the ground that it lacked jurisdiction because claimant failed to file a compensation claim. Since a complete statement of the injury was filed by both employer and insurance carrier within the required time, the court held that claimant's claim was not barred.

In passing on the question, the court remarked:

"There is no particular form of pleading required to give the State Industrial Commission jurisdiction to hear and determine a claim for compensation. Anything filed with the Industrial Commission that challenges its attention, caused it to act, is sufficient to put in motion the process of the Industrial Commission to see that compensation is paid to injured employees. It was intended by the Legislature that the Industrial Commission should supervise and protect labor and compel industry to pay for the loss of man power occasioned by accidents arising in the particular industry."

Furthermore, because the joint board conducted an inquiry into this question ahead of the supervisor, does not in any way reflect against the fact of the department's notice thereof. In *Utah Delaware Min. Co. v. Industrial Commission,* 76 Utah 187, 289 Pac. 94, the plaintiff employer sought a review of proceedings had

before the industrial commission in which compensation was awarded to one of its employees for injuries sustained. Plaintiff, *inter alia*, contended that, because claimant addressed his application for compensation to both the state insurance fund and to the industrial commission, this was not a proper filing with the commission and thus there had not been a timely filing. In reply to this contention, the court said:

"The point made is that [there] was not a filing with the Industrial Commission itself. But, as has been seen, the state insurance fund is but an arm or department of the Industrial Commission. Because of that the commission regarded the filing with the same effect as though it had been directly filed with the commission or with its secretary or clerk. . . . We thus are of the opinion that the claim filed as it was with the state insurance fund is in legal effect a claim filed with the commission."

█ We turn now to the next inquiry: the supervisor's opportunity for consideration of the back injury. In our opinion, this question confronted the supervisor immediately after the joint board's "summary and finding of fact and order" of September 16, 1935. The supervisor's refusal to consider the claimed injury to appellant's back, as shown by the above extract, had the same force and effect as though he had denied appellant's claim entirely. After a complete investigation of appellant's claim on its *merits,* the final action of the joint board in affirming the decision of the supervisor had a like effect.

Therefore, we are of the opinion that the department received notice of the back injury and the claim for compensation, that the question of the injury to appellant's back was before the supervisor and the joint board, that the appellant had the right to appeal from the order of the joint board to the superior court when the supervisor was upheld, and that the superior court

possessed jurisdiction to hear and determine that issue and to classify the disability. *Noll v. Department of Labor & Industries,* 179 Wash. 213, 36 P. (2d) 809.

The cross-appellant argues that the claim for injury to appellant's back was barred by the statute of limitations. The governing statute reads as follows:

"No application shall be valid or claim thereunder enforceable unless filed within one year after the day upon which the injury occurred or the rights of dependents or beneficiaries accrued." Rem. Rev. Stat., § 7686 [P. C. § 3480] (d).

This court has established the rule that the one year period in which the claim must be filed commences to run on the day of the accident. *Read v. Department of Labor & Industries,* 163 Wash. 251, 1 P. (2d) 234; *Ferguson v. Department of Labor & Industries,* 168 Wash. 677, 13 P. (2d) 39; *Sandahl v. Department of Labor & Industries,* 170 Wash. 380, 16 P. (2d) 623.

An exception to this rule, however, was announced in *Crabb v. Department of Labor & Industries,* 186 Wash. 505, 58 P. (2d) 1025, 105 A. L. R. 964. In this case, claimant was injured December 19, 1932, and filed his claim, or report of accident, December 20, 1932. Compensation was paid, the claim closed March 15, 1933, and no appeal was thereafter taken. July 18, 1934, claimant filed a petition to reopen the claim, as recited in the finding of the trial court:

" . . . that at the time that he sustained the injury to his right ankle described in Paragraph I of these findings his neck struck some object and he was knocked unconscious and he complained of his neck to his attending physician and others, but it did not cause him immediate disability; the appellant also alleged in said petition that said neck condition had not been mentioned in said report of December 20, 1932, for the reason that no immediate disability resulted and appellant was not incapacitated from performing his

usual work by said neck condition until more than a year after the accident; the appellant further alleged in said petition that after the claim was closed the condition of his neck resulting from said injury became aggravated and he alleged that at the time of filing the petition he was totally disabled due to the said condition of his neck, of which said accident was the proximate and only cause; . . ."

In stating the question to be decided, Judge Tolman, speaking for the court, said:

"Therefore, the present question is whether the report of a fall resulting in a sprained ankle is such a compliance with the statute as to permit another and an additional application for compensation, after the lapse of one year from the date of the injury, for other injuries growing out of the same accident, *the disabling effect of which was unknown to the claimant within one year.*" (Italics ours.)

This court held that, where the disabling effect of an injury was not known within one year from the date of the accident, and was thereafter discovered, the claim for compensation was not barred by the statute of limitations.

 Cross-appellant contends most vigorously that the case at bar does not come within the exception of the *Crabb* case, *supra*. It argues that appellant was cognizant of a disabling effect to his back within one year of the accident. After a careful study of the record, we are unable to agree in this contention.

In order to show the similarity between the facts of the *Crabb* case, *supra,* and the one at bar, we quote from the testimony of appellant:

"Q. You mentioned your back, what was your complaint about your back? A. I think there is a vertebra out of place. Q. No, what is your complaint about it? A. It gets so sore when I am working. Mr. BAKER: Stand up and show us where you are talking about, Mr. Nelson. A. That is the whole back and down in

here, it gets so sore I can't hardly get out of bed in the mornings. I have to have somebody help me get my clothes on and I was that way all the time when trying to work, the boss told me I was absolutely not fit to work. . . . Q. Did you notice any condition of that kind when you were first released from the hospital? A. Yes, and when I was over there for examination in Olympia I told them about it and they X-rayed it but never said anything about it. . . . Q. I want to know now about your back pains. During the three months you were in the hospital you never told the doctor or nurse about the back? A. No, I did not. . . . Q. During all this time, of course, as you said, you made no complaint about any back injury or back pain, I mean? A. I don't think I complained much about back pain. Q. You didn't complain at all about back pain, did you? A. No, I don't think I did. Q. How long did your back stay sore after that? A. Well, after I started to walk around it got pretty sore. Q. Did the first soreness go away that you had all over your back or did that stay on? A. It kind of stayed on, you know, but it wasn't very bad. It stayed on all the time but I didn't think it was very bad, I thought it would go away. . . . Q. And even when you left the hospital you didn't say anything about any soreness? A. I complained at Olympia when they called me over for examination. Q. You complained to whom? A. To the doctor there. Q. To Dr. Miller? A. I don't know what his name was. Q. That was in October, 1933, and did Dr. Miller give you a general examination or just look at your foot? A. No, he gave me a general examination and took X-Rays of my back and everything but he never said nothing to me about it. . . . Q. The back ache couldn't have been very serious or troubled you much if you didn't complain about it all the time in the hospital? A. The only time it got very severe is when I started to work. Q. Well, did you have this back pain at all until you started to work? A. Yes, I could feel it just like I can now. I can feel it now. I thought I could work it out of my system but I couldn't. Q. When did you start to work first when you got out of the hospital? A. I started to work the last part of

March. Q. March when? A. Last year. Q. 1934? A. Yes."

At the second rehearing before the joint board, March 4, 1936, appellant stated:

"Q. When did your back start bothering you? A. After I started in walking around. [That is, after he left the hospital, August 1, 1933] . . . Q. Did you come or take it up with the hospital at Port Angeles? A. No, I didn't. I went to work up here and tried to work. Q. That was in March, 1934, you went to work at the Crescent Logging Company? A. Yes. Q. How long did you work out there at that time? A. I worked there about a week and a half, somewhere like that — Q. And then you came here to the hospital? A. No, I come down to see the doctor. . . . Q. What was the matter with you then? A. Well, my back was pretty sore all the time and then I lifted on something and made it worse yet."

In addition, this testimony clearly reveals that, from the time of appellant's accident, May 1, 1933, to within one year thereafter, appellant was unaware of any known disabling effect to his back. That he suffered pain and experienced discomfort, cannot be denied. But like claimant in the *Crabb* case, appellant was not aware of any disabling back condition. As a matter of fact, appellant repeatedly declared that he thought he "could work it out of my [his] system." This belief would negative any knowledge of a back disability.

An additional comparison of the facts presented in the *Crabb* case and the one at bar reveals an amazing similarity as to the nature of the injury, the various complaints made by the injured workmen, and the time elapsing between the accident and the time when the claim for additional compensation was made. Furthermore, each claimant experienced pain in his back for a considerable portion of the time that the statute was running, but each did not know of its disabling effect.

Having in mind that the statutes relating to compensation must be liberally construed, and upon the authority of the *Crabb* case, we hold that appellant's claim for compensation on account of the injury to his back was timely presented to the department.

■ Cross-appellant urges that the petition for rehearing, filed October 31, 1935, did not comply with the requirements of Rem. Rev. Stat., § 7697 [P. C. § 3488], in that the petition did not mention the nature of the disability, the amount thereof, or the injuries on account of which the disability existed. In support of its contention, our attention is called to *Boley v. Department of Labor & Industries,* 177 Wash. 178, 31 P. (2d) 501; *State ex rel. Winningham v. Olinger,* 190 Wash. 697, 70 P. (2d) 317; *Albrecht v. Department of Labor & Industries,* 192 Wash. 520, 74 P. (2d) 22; and *Smith v. Department of Labor & Industries,* 1 Wn. (2d) 305, 95 P. (2d) 1031. Those cases do not pass upon the question presented. They refer only to the procedure to be followed in order that the superior court may review the acts of the department. None of them construe the provision of the statute to which cross-appellant has called our attention.

It is true that the statute prescribes the necessary contents of appeal petitions. However, this requirement cannot be considered as jurisdictional. It is merely for the benefit and convenience of the department. To take advantage of its noncompliance, the department must object at the time of, or before, the hearing. A failure to comply with the statute might result in a refusal of the joint board to hear the appeal until compliance therewith. Moreover, this requirement may be waived by order, or by proceeding with the hearing.

In this case, the record does not show that the joint board refused to consider the case until appellant had

complied with the provisions of the statute. But, on the other hand, it discloses that the hearing was conducted and that evidence was taken upon the petition for rehearing without further reference to its imperfections.

It is finally urged that the verdict of the jury was not justified as shown by the record before the joint board. Several doctors testified that appellant's suffering was due to arthritis of the spine and was not a result of injury to his back. Dr. James C. Hay, testifying for appellant, stated that he had made an examination of appellant and that, from the examination and the history of the case, he was of the opinion that the injury to appellant's back had affected and aggravated the arthritic condition of the back. He gave as his opinion that appellant was not able "to work at any labor." Within the rule laid down in *Alfredson v. Department of Labor & Industries,* 5 Wn. (2d) 648, 105 P. (2d) 37, the evidence was sufficient to take the case to the jury. That evidence offered room for difference of opinion in the minds of reasonable men. Therefore, the determination of the problem of what brought about appellant's condition was properly submitted to the jury.

The judgment is reversed, with instructions to the trial court to enter judgment upon the verdict of the jury.

ROBINSON, C. J., BEALS, MILLARD, and JEFFERS, JJ., concur.