213 P.3d 44 (2009)
James E. ELLIOTT, Appellant,
v.
DEPARTMENT OF LABOR AND INDUSTRIES of the State of Washington, Respondent.
No. 62423-7-I.
Court of Appeals of Washington, Division 1.
August 3, 2009.
*45 James R. Walsh, Thaddeus D. Sikes, Law Office of James R. Walsh, Lynnwood, WA, for Appellant.
Ingrid Golosman, Seattle, WA, for Respondent.
BECKER, J.
¶ 1 A worker injured on the job must file a claim within one year after the day upon which the injury occurred. A worker who contracts an occupational disease must file a claim within two years after the day the worker finds out about the disease and is notified of eligibility for benefits. In this case, the claimant watched a fellow worker fall to his death on the jobsite. More than a year later, upon being advised that he had a mental health condition related to the incident, he filed a claim. Because there is no discovery rule extending the deadline for filing an injury claim, and his condition does not meet the criteria for occupational disease, his application was properly denied as untimely.
¶ 2 Fourteen months after the accident in question, James Elliott filed a claim for workers' compensation benefits. The Department of Labor & Industries denied his claim. Elliott appealed.
¶ 3 In support of his appeal, Elliott submitted his own deposition, as well as the depositions of a social worker and his employer's director of safety. The evidence showed that Elliott was working on a Redmond construction site on September 5, 2004 when he heard *46 a noise above him. He looked up and saw a man falling through a hole in a ceiling. The man died after landing on his head on the concrete floor approximately 10 feet from where Elliott was standing.
¶ 4 A few days later, Elliott's employer required workers who saw the accident to attend a grief counseling session. The company's director of safety encouraged the workers to get personal counseling at the company's expense, but Elliott thought he was okay and did not seek help.
¶ 5 On Elliott's next job approximately two months later, he was anxious about working on a roof. He told the project manager he felt uncomfortable and was not putting forth his best effort. A short time later he was fired.
¶ 6 Elliott began drinking heavily and abusing drugs. By August 20, 2005, he realized he needed help and entered inpatient treatment. In treatment, Elliott was asked to write about negative things in his life. He wrote that he felt guilty about the worker's death because he had noticed safety violations on the jobsite, but had not called to report them. He also felt guilty because he was responsible for the placement of the hole the man fell through. After completing the 21-day program, Elliott was sober, but he started having nightmares about the death he had witnessed. He became depressed and suicidal.
¶ 7 On October 20, 2005, Elliott went to the emergency room at a hospital. A social worker there diagnosed Elliott as having post-traumatic stress disorder and attributed his condition to the worker's death. He recommended that Elliott get mental health treatment and talked to him about pursuing a workers' compensation claim. Elliott filed his claim for benefits that same day.
¶ 8 An industrial appeals judge concluded Elliott's claim was untimely because it was not filed within one year after the day on which the injury occurred. "While the claimant's case is compelling, the claimant cites no authority that would allow him to be relieved from the requirements of the statute. Accordingly, there is, unfortunately, no basis upon which to grant the relief the claimant seeks in this appeal." The Board of Industrial Insurance Appeals adopted the decision of the hearing judge and denied Elliott's petition for review. Elliott appealed the decision to the Superior Court. The court affirmed the Board's decision on summary judgment.
¶ 9 A superior court reviewing a decision under the Industrial Insurance Act considers the issues de novo, relying on the certified board record. RCW 51.52.115; Malang v. Dep't of Labor and Indus., 139 Wash.App. 677, 683, 162 P.3d 450 (2007). Only issues of law or fact that were included in the notice of appeal to the Board or in the proceedings before the Board may be raised in the superior court. RCW 51.52.115. Our review of the superior court's decision on summary judgment is de novo. Malang, 139 Wash. App. at 683-84, 162 P.3d 450.
¶ 10 A claim to receive benefits for an injury is timely if filed "within one year after the day upon which the injury occurred." RCW 51.28.050. "Injury" means "a sudden and tangible happening, of a traumatic nature, producing an immediate or prompt result, and occurring from without, and such physical conditions as result therefrom." RCW 51.08.100.
¶ 11 A claim for benefits for an occupational disease, in contrast to an injury, is timely if filed within two years after the worker receives notice from a medical provider that the disease exists and that a claim may be filed:
(1) Except as provided in subsection (2) of this section for claims filed for occupational hearing loss, claims for occupational disease or infection to be valid and compensable must be filed within two years following the date the worker had written notice from a physician or a licensed advanced registered nurse practitioner: (a) Of the existence of his or her occupational disease, and (b) that a claim for disability benefits may be filed.
RCW 51.28.055(1). Occupational disease means "such disease or infection as arises naturally and proximately out of employment under the mandatory or elective adoption provisions of this title." RCW 51.08.140.
*47 ¶ 12 Elliott contends that the discovery rule provided by statute for occupational disease should also apply to injury claims. "Washington's case law," he asserts, "does not reveal any good reason not to provide an avenue of compensation for claims like Mr. Elliott's where there is a specific event which results in latent disabilities which are not detected and are not known to be related to the event at work until after the one year time bar has expired." Elliott is in the wrong forum to make this argument. This court may not relax the one-year statute of limitations where the legislature has clearly expressed its intent to allow a "time of manifestation" or "discovery" rule only for occupational diseases, not for injuries. See Rector v. Dep't of Labor and Indus., 61 Wash.App. 385, 810 P.2d 1363 (1991).
¶ 13 The claimant in Rector was employed as an ironworker in 1969 when he fell four stories and struck the back of his head. He did not realize he had completely lost his hearing in his right ear until 1986, when a doctor told him he had a 15 percent hearing loss in his left ear resulting from occupational disease and a 100 percent hearing loss in his right ear most likely resulting from the trauma of the 1969 fall.
¶ 14 Rector filed a claim for benefits for an occupational hearing loss. The Department awarded him benefits for the 15 percent loss of hearing in his left ear, but denied him benefits for the complete loss of hearing in his right ear. Rector's appeal reached this court. The issue on appeal was "whether the statute of limitations for filing a claim for a work-related injury under the Workers Compensation Act begins to run on the day of the accident or on the day that the worker discovered, or reasonably should have discovered, the injury." Rector, 61 Wash.App. at 388, 810 P.2d 1363. Rector argued  as Elliott does  that the discovery rule should apply because otherwise he would be denied any recovery, contrary to the legislature's liberal intent when it enacted workers' compensation laws. Rector also argued that his claim should be allowed because, under the common law of torts, his cause of action could not accrue until his injury became apparent.
¶ 15 An industrial insurance claim is "governed by explicit statutory directives and not by the common law." Rector, 61 Wash.App. at 390, 810 P.2d 1363. In Rector, we surveyed the evolution of the statute and concluded that while a former version of the statute had allowed the date of accrual to vary, the legislature amended the statute in 1927 to remove the discovery rule. The former statute (Rem.Rev.Stat. § 7675) defined "injury" as an "injury resulting from some fortuitous event as distinguished from the contraction of disease." Rector, 61 Wash.App. at 388, 810 P.2d 1363. Under the current statute, as amended in 1927, an injury is indistinguishable from the accident that caused it. Regardless when the physical effects of the injury become manifest, the injury occurs and the one-year statute of limitations begins to run when the accident happens. Rector, 61 Wash.App. at 389-90, 810 P.2d 1363.
¶ 16 Rector's circumstances were distinguished from those of the workers in Crabb v. Dep't of Labor and Indus., 186 Wash. 505, 58 P.2d 1025 (1936) and Nelson v. Dep't of Labor and Indus., 9 Wash.2d 621, 115 P.2d 1014 (1941). In Crabb, the worker timely sought compensation for an ankle injury and later asked to be compensated for a neck injury arising from the same accident. In Nelson, the worker filed a timely claim for a fractured ankle and more than a year after the accident filed a claim for back injuries from the same accident. In both Crabb and Nelson the claims for later-discovered injuries were allowed because the workers had filed claims within a year of their accidents, albeit for different injuries. In contrast, Rector did not file a claim within one year after the accident. Consequently, he could not receive benefits under the Act. Rector, 61 Wash.App. at 390, 810 P.2d 1363.
¶ 17 In Rector, the court noted that the claimant received medical treatment for his head injury immediately after his fall. Rector, 61 Wash.App. at 390, 810 P.2d 1363. Elliott points out that he did not even seek treatment until more than a year after the traumatic event. But even though witnessing the death did not produce immediate symptoms or effects in Elliott, nevertheless, *48 under Rector the one-year statute of limitations begins to run on the date of the accident.[1] A worker may file a claim even if there is no evidence of a compensable injury at the time of the accident:
The Industrial Insurance Act does not require that a worker have evidence of a compensable injury for purposes of filing a claim under the act and, in fact, provides for the reopening of a settled claim if subsequent injuries arise stemming from the original accident if application is "made within seven years from the date the first closing order becomes final[.]" RCW 51.32.160. Hence, the statute of limitation for filing the initial claim for an occupational injury begins to run when the accident occurs and not when the worker discovers an injury.
Rector, 61 Wash.App. at 390-91, 810 P.2d 1363.
¶ 18 Elliott cites Todd Shipyards Corp. v. Black, 717 F.2d 1280 (9th Cir.1983) as authority for applying the discovery rule in industrial injury cases. Todd is not persuasive because it involved an occupational disease claim and was decided under a different statute.
¶ 19 Elliott argues that if the delay in the manifestation of his mental condition means that he is not entitled to benefits for an "injury," then his condition should be considered as fitting within the definition of an occupational disease. This would make his claim timely because he filed it immediately after being advised that he had a diagnosis of depression and post-traumatic stress syndrome related to witnessing the other worker's death. Elliott contends that his condition arose "naturally and proximately out of employment" because his job required him to work up high on precarious new construction, the unsafe conditions on his job were distinctive to his employment, and he naturally felt guilty because he positioned the hole through which the other worker fell.
¶ 20 The Department asserts that Elliott filed and litigated his claim as an injury and thereby waived any right to argue that he has a right to benefits for an occupational disease. But whether or not Elliott waived the argument, it fails. In 1988, the legislature expressed its intention that mental conditions or disabilities caused by stress should not be treated as occupational diseases: "The department shall adopt a rule pursuant to chapter 34.05 RCW that claims based on mental conditions or mental disabilities caused by stress do not fall within the definition of occupational disease in RCW 51.08.140." RCW 51.08.142. The Department adopted WAC 296-14-300 to comply with the legislature's directive:
(1) Claims based on mental conditions or mental disabilities caused by stress do not fall within the definition of an occupational disease in RCW 51.08.140.
. . .
(2) Stress resulting from exposure to a single traumatic event will be adjudicated with reference to RCW 51.08.100.
¶ 21 Elliott's condition resulted from the stress of exposure to a single traumatic event. Accordingly, he was not entitled to benefits for an occupational disease. His claim was properly adjudicated with reference to the definition of an occupational "injury" in RCW 51.08.100 and was properly found to be untimely.
¶ 22 Elliott argues that his claim should nevertheless be allowed because doubts about the meaning of the Industrial Insurance Act are to be liberally construed in favor of the injured worker. "But it is fundamental that, when the intent of the legislature is clear from a reading of a statute, there is no room for construction." Johnson v. Dep't of Labor and Indus., 33 Wash.2d 399, 402, 205 P.2d 896 (1949). The statute requires a claim for injury to be filed within one year after the day upon which the injury occurred. The injury is indistinguishable from the sudden and traumatic event that caused it. Because Elliott did not file a claim within a year of the traumatic event that *49 caused his mental condition, the Department properly denied his claim for benefits, and the superior court did not err when it affirmed the Department on summary judgment.
WE CONCUR: LEACH and COX, JJ.
NOTES
[1] The current statute defines "injury" in part as "a sudden and tangible happening, of a traumatic nature, producing an immediate or prompt result." Even if Elliott's claim had been timely, it is unclear that his mental condition would have been regarded as the "immediate or prompt" result of the traumatic event he witnessed.