**NOTICE:   SLIP OPINION**
**(not the court's final written decision)**

The opinion that begins on the next page is a slip opinion.  Slip opinions are the written opinions that are originally filed by the court.

A slip opinion is not necessarily the court's final written decision.  Slip opinions can be changed by subsequent court orders.  For example, a court may issue an order making substantive changes to a slip opinion or publishing for precedential purposes a previously "unpublished" opinion.  Additionally, nonsubstantive edits (for style, grammar, citation, format, punctuation, etc.) are made before the opinions that have precedential value are published in the official reports of court decisions: the Washington Reports 2d and the Washington Appellate Reports.  An opinion in the official reports replaces the slip opinion as the official opinion of the court.

**The slip opinion that begins on the next page is for a published opinion, and it has since been revised for publication in the printed official reports.**  The official text of the court's opinion is found in the advance sheets and the bound volumes of the official reports.  Also, an electronic version (intended to mirror the language found in the official reports) of the revised opinion can be found, free of charge, at this website: https://www.lexisnexis.com/clients/wareports.

For more information about precedential (published) opinions, nonprecedential (unpublished) opinions, slip opinions, and the official reports, see https://www.courts.wa.gov/opinions and the information that is linked there.

For the current opinion, go to https://www.lexisnexis.com/clientfilesharedwareports/.

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| RONALD CORDOVA, DEC'D, | ) | No. 81947-0-I |
| | ) | |
| Appellant, | ) | DIVISION ONE |
| | ) | |
| v. | ) | |
| | ) | |
| CITY OF SEATTLE and THE | ) | ORDER GRANTING |
| DEPARTMENT OF LABOR AND | ) | MOTIONS TO PUBLISH |
| INDUSTRIES OF THE STATE OF | ) | |
| WASHINGTON, | ) | |
| | ) | |
| Respondents. | ) | |

Appellant Ronald Cordova, respondent the city of Seattle, and nonparty attorney Brian M. Wright each filed a motion to publish the opinion filed on November 22, 2021 in the above case. A majority of the panel has determined that the motions should be granted. Now, therefore, it is hereby

ORDERED that the motions to publish the opinion are granted.

FOR THE COURT:

Judge

For the current opinion, go to https://www.lexisnexis.com/clients/WAreports/.

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| RONALD CORDOVA, DEC'D, | ) | No. 81947-0-I |
| | ) | |
| Appellant, | ) | DIVISION ONE |
| | ) | |
| v. | ) | |
| | ) | |
| CITY OF SEATTLE and THE | ) | |
| DEPARTMENT OF LABOR AND | ) | UNPUBLISHED OPINION |
| INDUSTRIES OF THE STATE OF | ) | |
| WASHINGTON, | ) | |
| | ) | |
| Respondents. | ) | |

BOWMAN, J. — A workers' compensation application need not be formal or highly technical but it must, within a year of a worker's injury or death, notify the Department of Labor and Industries (DLI) that the applicant seeks workers' compensation benefits. Because Tracy Cordova's application to the Department of Retirement Services (DRS) for a one-time death benefit did not notify DLI that she also sought workers' compensation, we conclude that the Board of Industrial Insurance Appeals (BIIA) properly denied her subsequent DLI claim as untimely. We affirm the superior court's order on summary judgment affirming the decision of the BIIA.

FACTS

Ronald Cordova worked for the city of Seattle (City) as a police detective. He died at home on April 30, 2017 from a ruptured cerebral aneurysm. His wife

No. 81947-0-I/2

Tracy[1] believed "unusual stress" from Ronald's job led to his aneurysm, so she timely applied for a "lump sum benefit payment" through DRS under the Washington Law Enforcement Officers' and Fire Fighters' Retirement System Act (LEOFF), chapter 41.26 RCW. The application titled "One-Time Duty-Related Death Benefit" bore the DRS logo and "Washington State Department of Retirement Systems" on the first page and identified DRS on each subsequent page.

Per statute, DRS sent Tracy's application to DLI to process on its behalf.[2] DLI through its "Pension Adjudicator Section" denied Tracy's claim. In its December 2017 order, pension adjudicator Noreen Currier denied the application for the one-time death benefit "because the cause of death is not related to either an injury sustained in the course of employment or an occupational disease." The order displays DRS claim number "DRS0202."

Tracy hired an attorney, who wrote a letter in January 2018 protesting the denial of DRS benefits. The letter identified Tracy's DRS application by claim number DRS0202 but described the retirement benefits application as a "Labor and Industries claim." The attorney mailed the letter to the general DLI post-office box address but did not identify the Pension Adjudication Section as the intended recipient.

---

[1] For clarity, we refer to Tracy Cordova and Ronald Cordova by their first names. We intend no disrespect.

[2] DLI determines an individual's eligibility for a one-time death benefit claim under RCW 41.26.048 and WAC 415-02-710(3).

No. 81947-0-I/3

DLI responded that it was "unable to locate a claim for this injured worker" and requested Tracy's attorney add a "current state fund claim number" and provide a "report of accident." Tracy's attorney replied by resending his original letter with the DRS0202 claim number but added "Attn: Noreen" in the upper right corner. The DLI Pension Adjudicator Section confirmed receipt of the second letter and on May 9, 2018, affirmed the December 2017 order denying Tracy's claim "for death benefits provided under RCW 41.26.048," finding Ronald's death was not duty-related. Tracy timely appealed the ruling to the BIIA.

Tracy asserts that on September 11, 2018, she realized for the first time that she had not applied for Title 51 RCW workers' compensation benefits with either the City or DLI. So on September 25, 2018, nearly 17 months after Ronald died, Tracy applied to the City for Title 51 RCW benefits.[3] On October 30, 2018, DLI denied Tracy's claim because she did not file it within the one-year statutory period and because she did not establish an employment-related injury.[4]

Tracy protested the decision and the BIIA assigned her case to an industrial appeals judge (IAJ). Tracy and the City cross moved for summary judgment on timeliness grounds. DLI joined the City's motion. The IAJ granted summary judgment for the City and DLI. The IAJ also rejected Tracy's argument that the BIIA should equitably estop DLI from rejecting her application for Title 51 RCW benefits as untimely.

---

[3] Because Ronald worked for the City, a self-insured employer, the DLI oversees applications for workers' compensation, though the City is directly responsible for the costs. RCW 51.14.010, .020; RCW 41.26.048.

[4] The issue of whether Ronald's death was employment-related is not before us.

3

The BIIA also denied Tracy's petition for review. Tracy then appealed to the Snohomish County Superior Court. Tracy and the City again cross moved for summary judgment on timeliness grounds. DLI responded to both motions, arguing the court should grant the City's motion and deny Tracy's. The superior court granted summary judgment for the City, affirming the BIIA and dismissing Tracy's appeal. The superior court determined that Tracy's claim was untimely and such untimeliness "cannot be excused under the doctrine of equity."

Tracy appeals.

ANALYSIS

Timeliness

Tracy argues the superior court erred in granting the City's summary judgment motion because the BIIA erred by rejecting her claim for Title 51 RCW benefits as untimely. She claims the "information and documents [she] submitted to DRS and delivered to DLI, along with her counsel's subsequent letters to DLI," amount to a timely application for workers' compensation benefits under RCW 51.28.020. We disagree.

We review a superior court's grant of summary judgment de novo, engaging in the same inquiry as the superior court. Hill v. Dep't of Labor & Indus., 161 Wn. App. 286, 292, 253 P.3d 430 (2011); Rabey v. Dep't of Labor & Indus., 101 Wn. App. 390, 393-94, 3 P.3d 217 (2000). A party is entitled to summary judgment when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. CR 56(c). The moving party must establish its right to judgment as a matter of law, and we view

the facts in the light most favorable to the nonmoving party. Romo v. Dep't of Labor & Indus., 92 Wn. App. 348, 354, 962 P.2d 844 (1998). In our review, we rely exclusively on the certified BIIA record. Watson v. Dep't of Labor & Indus., 133 Wn. App. 903, 909, 138 P.3d 177 (2006); RCW 51.52.115. We accept the BIIA's decision as prima facie correct, and the party challenging the decision must support its challenge by a preponderance of the evidence. Watson, 133 Wn. App. at 909; Hill, 161 Wn. App. at 291.

Title 51 RCW governs claims for industrial insurance and workers' compensation. Under RCW 51.28.030, a party making a workers' compensation claim "shall make application for the same . . . accompanied with proof of death and proof of relationship showing the parties to be entitled to compensation." Under RCW 51.28.050, "[n]o application shall be valid or claim thereunder enforceable unless filed within one year after the day upon which the injury occurred or the rights of dependents or beneficiaries accrued."

We construe Title 51 RCW liberally "for the purpose of reducing to a minimum the suffering and economic loss arising from injuries and/or death occurring in the course of employment." RCW 51.12.010. In that regard, we have determined that an application for Title 51 RCW benefits need not be as formal and highly technical as a pleading. Magee v. Rite Aid, 144 Wn. App. 1, 8, 182 P.3d 429 (2008). Any writing seeking Title 51 RCW benefits "filed with the Industrial Commission that challenges its attention, and causes it to act, is sufficient to put in motion the process of the Industrial Commission to see that

No. 81947-0-I/6

compensation is paid." Magee, 144 Wn. App. at 9 (citing Nelson v. Dep't of Labor & Indus., 9 Wn.2d 621, 630, 115 P.2d 1014 (1941)).

Citing Nelson, Tracy argues her May 4, 2017 DRS LEOFF application along with her attorney's letters notified DLI that she was also seeking workers' compensation benefits. In Nelson, a logger broke his ankle and fell on his neck and upper back while working in the forest. Nelson, 9 Wn.2d at 623. The logger timely applied for workers' compensation related to his broken ankle and DLI approved his claim. Nelson, 9 Wn.2d at 623. Less than a year after his injury, the logger petitioned DLI for a rehearing, seeking additional compensation for "increasing pain in his spine and head, dizziness and weakness in his back due to said injury and the fall upon his back." Nelson, 9 Wn.2d at 624-25.[5]

Our Supreme Court held that the logger's petition amounted to an application for additional Title 51 RCW benefits. Nelson, 9 Wn.2d at 628-29. It reasoned that the petition was a writing "filed with the department" that "reasonably directs its attention to the fact that an injury with its particulars has been sustained and that compensation is claimed." Nelson, 9 Wn.2d at 629. Because the logger first notified DLI of his injuries within the one-year statute of limitations, he timely "challenged the attention of the department." Nelson, 9 Wn.2d at 629-30.

Tracy's claim is distinguishable from the petition in Nelson. In Nelson, the logger petitioned for additional compensation in an existing Title 51 RCW claim. But here, Tracy had no existing Title 51 RCW claim. Her May 2017 application was titled "One-Time Duty-Related Death Benefit" and bore either the DRS logo

---

[5] Emphasis omitted.

6

No. 81947-0-I/7

and/or "Department of Retirement Systems" on each page. It made no mention of workers' compensation benefits and sought only an LEOFF one-time death payout—a separate benefit from a different government agency.

Neither did the protest letters sent by Tracy's attorney notify DLI that she was also claiming workers' compensation.[6] Though her attorney asserted that he "represents Tracy . . . with regard to the Labor and Industries claim referenced above," the "claim referenced" was DRS0202, the case number DRS assigned to her one-time death benefit application. In trying to clarify the discrepancy, DLI told the attorney that it was "unable to locate a claim for this injured worker" and requested a current state fund claim number and a copy of an accident report. Still, Tracy's attorney made no effort to explain that Tracy was seeking both LEOFF and Title 51 RCW benefits. Instead, he sent his original protest letter again but wrote "Attn: Noreen"—the first name of the DLI pension adjudicator who processes DRS death benefit claims—on the upper right corner. As a result, DLI forwarded the letter to their Pension Adjudication Section and processed the claim for only DRS benefits.

We agree with DLI that this case is more like Magee. In that case, Rite Aid employee Magee claimed her supervisor sexually assaulted her. Magee, 144 Wn. App. at 4. She petitioned for an antiharassment order against her supervisor and sued him civilly. Magee, 144 Wn. App. at 4-5. Rite Aid was not a named party to either civil action but it received copies of the antiharassment

---

[6] As much as Tracy argues that applications for an LEOFF payout and workers' compensation benefits are coextensive, her argument is unsupported by citation to legal authority, so we do not consider it. RAP 10.3(a)(6); Cowiche Canyon Conservancy v. Bosley, 118 Wn.2d 801, 809, 828 P.2d 549 (1992) (argument unsupported by reference to the record or citation to authority will not be considered).

7

order and Magee's answer to the supervisor's counter suit and participated in settling the lawsuit. Magee, 144 Wn. App. at 5-6. Magee later sought workers' compensation for her injuries and claimed that Rite Aid's receipt of the antiharassment order and her answer was sufficient timely notice that she would be seeking workers' compensation under Title 51 RCW.[7] Magee, 144 Wn. App. at 9. We concluded that under Nelson, the documents did not amount to an application for Title 51 RCW benefits. Magee, 144 Wn. App. at 11.[8] Because the documents sought only civil damages for Magee's injuries, Rite Aid could not "reasonably infer that a claim for workers' compensation [wa]s being made." Magee, 144 Wn. App. at 11.

Like the documents in Magee, Tracy's DRS application did not notify DLI that she was seeking workers' compensation. She filed her application with DRS seeking an LEOFF one-time death benefit. Nothing in the application would reasonably cause DLI in their role as DRS pension adjudicator to conclude that Tracy was also seeking workers' compensation benefits.

Tracy argues that Magee "is readily distinguishable" because notice of the claim there was "wholly unrelated to statutory benefits," while her application sought a specific, though different, statutory benefit. But she fails to explain how notice of Ronald's death in the form of a DRS application for a one-time death benefit differs in any meaningful way from notice of Magee's injury in the form of

---

[7] Rite Aid was a self-insured employer under RCW 51.14.020. Magee, 144 Wn. App. at 13.

[8] We expressed our concern that the notice requirement established in Nelson is outdated given "the many changes to workers' compensation law that have taken place over the past seven decades" and urged legislative review of the statutory scheme to prevent future similar outcomes. Magee, 144 Wn. App. at 15-16 (Dwyer, J., concurring). To date, neither the Supreme Court nor the legislature has acted.

No. 81947-0-I/9

a civil lawsuit seeking money damages. Neither notifies the insurer of a claim for Title 51 RCW benefits. We conclude that the BIIA properly determined that the sum of Tracy's communications with DLI did not amount to an application for workers' compensation benefits and the superior court did not err in granting the City's summary judgment motion.

<u>Equitable Estoppel</u>

Tracy argues that even if the information she submitted to DRS did not amount to an application for benefits under Title 51 RCW, "DLI should be [equitably] estopped from denying that her claim was timely made." We disagree.

The trial court has broad discretion, exercised in light of the facts and circumstances of a particular case, to determine whether a party is entitled to equitable relief. <u>Rabey</u>, 101 Wn. App. at 396; <u>Heckman Motors, Inc. v. Gunn</u>, 73 Wn. App. 84, 88, 867 P.2d 683 (1994). In industrial insurance cases, a trial court may grant equitable relief only in the limited circumstances where (1) a claimant's competency to understand orders, procedures, and time limits affects the communication process and (2) DLI engaged in misconduct. <u>Rabey</u>, 101 Wn. App. at 395 (citing <u>Kingery v. Dep't of Labor & Indus.</u>, 132 Wn.2d 162, 174, 937 P.2d 565 (1997)); <u>Lynn v. Dep't of Labor & Indus.</u>, 130 Wn. App. 829, 839, 125 P.3d 202 (2005); <u>Harman v. Dep't of Labor & Indus.</u>, 111 Wn. App. 920, 924, 47 P.3d 169 (2002). We review a superior court's decision whether to fashion an equitable remedy for an abuse of discretion. <u>Harman</u>, 111 Wn. App, at 923.

No. 81947-0-I/10

Tracy contends that DLI engaged in misconduct because it failed to notify her of her rights under RCW 51.28.010. That statute compels DLI to notify workers or beneficiaries of their statutory rights after receiving an accident report from an employer:

> (1) Whenever any accident occurs to any worker it shall be the duty of such worker or someone in his or her behalf to forthwith report such accident to his or her employer . . . and of the employer to at once report such accident and the injury resulting therefrom to [DLI] . . . .
> (2) Upon receipt of such notice of accident, [DLI] shall immediately forward to the worker or his or her beneficiaries or dependents notification, in nontechnical language, of their rights under this title.

RCW 51.28.010. But DLI did not receive an accident report from Ronald's employer. Instead, it received notice of his death in the form of an application for DRS benefits provided to its Pension Adjudication Section. As a result, the application did not trigger the notice requirement under RCW 51.28.010. And even if we construed the statute so broadly as to trigger a duty to notify on receipt of a report of injury from any source, DLI's failure to interpret the statute likewise does not amount to misconduct.

Tracy also asserts that DLI engaged in misconduct by obscuring from her its role in processing DRS applications. The record does not support her assertion.

DLI's letter accompanying its order denying Tracy's application for LEOFF benefits identifies Noreen Currier as the "Pension Adjudicator" and explains that DLI "received your application for death benefits through the Department of Retirement Systems." It then explains that DLI "determines eligibility for the

10

death benefit you have filed for." And the order itself states that "[t]he application for the death benefit provided under RCW 41.26.048 . . . is hereby denied." The order displays DRS claim number DRS0202. And it includes addresses for both the "Dept. of Retirement Systems LEOFF" and "Dept. of Labor and Industries Pension Adjudicator Section." The record shows that DLI adequately identified its role as Pension Adjudicator for DRS when communicating with Tracy.

Because Tracy's DRS application did not also amount to an application for Title 51 RCW benefits and she was not entitled to equitable relief, the BIIA did not err in concluding her application for workers' compensation was untimely. We affirm the superior court order granting the City's summary judgment motion to dismiss Tracy's appeal.

Brunner, J

I CONCUR:

Smith, J.

11

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

Cordova v. City of Seattle, No. 81947-0-I

DWYER, J. (concurring and dissenting) — More than a dozen years ago, in a case referenced in the majority opinion, I expressed my dismay at the state of the law concerning the requirement that a writing be filed with the Department of Labor and Industries in order to pursue a workers' compensation claim.  See Magee v. Rite Aid, 144 Wn. App. 1, 12, 182 P.3d 429 (2008) (Dwyer, J., concurring).  My premise then was simple: the legislature had not chosen to define a "claim" or to delineate that which was required to constitute a "claim," and the Supreme Court's formulations of such requirements as explicated in Nelson v. Dep't of Labor & Industries, 9 Wn.2d 621, 115 P.2d 1014 (1941), were anti-worker, inconsistent with the evolution of workers' compensation law, and unjust.  I urged that either the legislature cure the problem by statute or that the Supreme Court ride to the rescue and alter its Nelson decision.

As with most such exhortations by intermediate appellate court judges, my jurisprudential call to arms failed to inspire legislative rescue.  And the Justices remained dismounted.

As to the content of the notices given to the Department of Labor and Industries herein, the majority imposes an injustice by correctly applying the law.  As I observed 13 years ago, "[t]hus, with a reluctance outweighed only by my obligation to the law, I concur"[1] in that decision.

---

[1] Magee, 144 Wn. App. at 16 (Dwyer, J., concurring).

No. 81947-0-I/2

However, there is more to this case. Both the Board of Industrial Insurance Appeals and the superior court ruled that Tracy Cordova did not file a writing with the Department of Labor and Industries within one year of Detective Ronald Cordova's death, as required by statute. See RCW 51.28.050. To reach its decision, the majority does not need to address this issue and understandably does not do so.

But I disagree with both the Board and the superior court on this question. And here is why.

The statutory requirement is merely that a writing be filed with the Department of Labor and Industries. See RCW 51.28.010. As conceded at oral argument in this court, *any* employee of the Department of Labor and Industries can be the recipient of the filing. The statute does not provide otherwise. Moreover, to "file" the writing does not require action akin to service of process in a civil action. To the contrary, the writing can be mailed to *anyone* employed by the Department of Labor and Industries or to the Department itself.

Here, such a filing happened twice. It first happened when an employee of the Department of Retirement Systems transmitted documents sent to them by Tracy Cordova to the Department of Labor and Industries for claim handling. It happened a second time when Tracy Cordova's attorney wrote and mailed his January 2018 letter, which was received by an employee of the Department of Labor and Industries.

I recognize that the majority rejects these filings as insufficient in their *content*—but that is a separate question. Tracy Cordova unquestionably filed—

2

twice—a writing with the Department of Labor and Industries in a timely manner. Her claims were *timely* even if their content was insufficient under the <u>Nelson</u> requirements.

It is important that we recognize this distinction. Widows are not supposed to have to hire lawyers in order to receive widow's benefits. This area of law is confused enough without conflating the issues at hand.

Both the Board and the superior court erred in their rulings on this question.

<u>Dwyer, J.</u>