IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION ONE

| | | |
|---|---|---|
| CHRISTOPHER R. BLANCHARD, | ) | No. 82989-1-I |
| | ) | |
| Appellant, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| THE WASHINGTON STATE | ) | UNPUBLISHED OPINION |
| EMPLOYMENT SECURITY | ) | |
| DEPARTMENT, | ) | |
| | ) | |
| Respondent. | ) | |
| | ) | |

VERELLEN, J. — Christopher Blanchard contends he is entitled to unemployment benefits because he receives a statutory pension under RCW 51.08.160 rather than a discretionary pension under RCW 51.32.060. But RCW 51.08.160 merely defines "permanent total disability." And under the unemployment compensation statute, RCW 50.20.085, a person who receives permanent total disability benefits cannot simultaneously receive unemployment benefits. Because Blanchard receives permanent total disability benefits, he is disqualified from receiving unemployment benefits.

Therefore, we affirm.

FACTS

In 1997, while working at Chihuly Studios, Christopher Blanchard fell from a scissor lift and sustained serious injuries. Blanchard is an incomplete quadriplegic. He can turn his head and use his arms, but he has no function in his hands, fingers, and

legs. As a result of his workplace injury, the Department of Labor and Industries (Department) found Blanchard permanently disabled and began paying him a disability pension of $5,000 monthly.

A year later, Chihuly employed Blanchard as a designer for 30 hours a week. The Department determined that even though Blanchard resumed work, he was still entitled to receive workers' compensation benefits as a result of his permanent total disability.

In 2020, due to the Covid-19 pandemic, Chihuly reduced Blanchard's hours to 20 hours a week. Blanchard applied for unemployment insurance benefits under the shared work program. The Employment Security Department denied Blanchard's claim.

Blanchard appealed the Employment Security Department's decision. After an administrative hearing, an administrative law judge (ALJ) issued an order affirming the decision. Blanchard requested review of the ALJ's decision by the Employment Security Department's commissioner.

The commissioner agreed with the ALJ and concluded that Blanchard "[i]s not entitled to unemployment benefits. The fact that Labor and Industries permits him to work a certain number of hours because he is on a statutory pension has no effect on the very strict language in the statute that disqualifies a claimant from receiving unemployment benefits if he is receiving workers' compensation benefits." Blanchard appealed the commissioner's decision to the trial court. The trial court affirmed.

Blanchard appeals.

ANALYSIS

Blanchard argues that the trial court erred in denying him unemployment benefits because he receives a statutory pension under RCW 51.08.160, which entitles him to receive disability and unemployment benefits simultaneously. We disagree.

Under the Washington Administrative Procedure Act, chapter 34.05 RCW, we review the findings and the decisions of the commissioner, not the superior court's decision or the ALJ's decision, except to the extent that the commissioner adopts the ALJ's findings.[1] "The commissioner's decision is presumed prima facie correct and the petitioner has the burden of proving otherwise."[2] We review administrative findings of fact for substantial evidence and conclusions of law de novo.[3] Unchallenged findings are verities on appeal.[4] This appeal presents a question of law based upon the undisputed facts.

Specifically, the central issue presented here is whether Blanchard receives permanent total disability benefits under RCW 51.32.060 and therefore is prevented from simultaneously receiving unemployment benefits. The faulty premise underlying Blanchard's argument is that there are two distinct types of permanent total disability pensions for purposes of the unemployment compensation statute.

---

[1] Darkenwald v. State, Emp't Sec. Dep't, 183 Wn.2d 237, 244, 350 P.3d 647 (2015) (citing Verizon Nw., Inc. v. Emp't Sec. Dep't, 164 Wn.2d 909, 194 P.3d 255 (2008)); Emps. of Intalco Aluminum Corp. v. Emp't Sec. Dep't, 128 Wn. App. 121, 126, 114 P.3d 675 (2005).

[2] Emps. of Intalco Aluminum Corp., 128 Wn. App. at 126.

[3] Darkenwald, 183 Wn.2d at 244 (citing Smith v. Emp't Sec. Dep't, 155 Wn. App. 24, 226 P.3d 263 (2010)).

[4] Id. (citing Quadrant Corp. v. State Growth Mgmt. Hearings Bd., 154 Wn.2d 224, 110 P.3d 1132 (2005)).

RCW 51.08.160 defines permanent total disability as the "loss of both legs, or arms, or one leg and one arm, total loss of eyesight, paralysis or other condition permanently incapacitating the worker from performing any work at any gainful occupation." Blanchard contends the portion of RCW 51.08.160 defining permanent total disability as "the loss of both legs, or arms, or one leg and one arm, total loss of eyesight or paralysis" are statutory pensions based upon disability as a matter of law which does not require any discretionary decision by the supervisor of industrial insurance regarding the impact of that disability upon the individual's ability to work. He argues the remaining category of "other condition[s] permanently incapacitating the worker from performing any work at any gainful occupation" are discretionary pensions because "they <u>require</u> the supervisor of industrial insurance to evaluate the nature of the injury and . . . <u>determine</u> whether the injured worker has the capacity to perform gainful employment,"[5] and it is only discretionary pensions that disqualify a person from unemployment benefits.

RCW 51.32.060(1), the permanent total disability compensation statute, provides "[w]hen the supervisor of industrial insurance shall determine that permanent total disability results from the injury, the worker shall receive monthly during the period of such disability [a percentage of his or her wages specified in that statute]."[6]

And RCW 50.20.085 of the unemployment compensation statute provides "[a]n individual is disqualified from [unemployment] benefits with respect to any day or days

---

[5] Appellant's Br. at 12.

[6] Stated another way, the plain meaning of RCW 51.32.060 is that any permanent total disability pension requires the supervisor of industrial insurance to determine "that the [claimant's] permanent total disability results from the injury."

for which he or she is receiving, has received, or will receive compensation under RCW 51.32.060 or 51.32.090."[7]

Here, as a result of his workplace injury, the Department determined that Blanchard was "totally disabled."[8] After his accident, the Department began paying $5,000 monthly in a "disability pension."[9] His permanent total disability pension was paid under RCW 51.32.060 based upon and consistent with the definition of "permanent total disability" in RCW 51.08.160.

His ongoing employment for 30 hours a week did not impact his permanent total disability pension. When Blanchard's hours were reduced due to the Covid-19 pandemic, he applied for unemployment benefits. He accurately disclosed in his application that he was also receiving "workers' compensation benefits."[10] Because Blanchard is permanently disabled and receives a monthly pension as a result of his injury, his pension necessarily is "compensation under RCW 51.32.060." As a matter of law, RCW 50.20.085 disqualifies Blanchard from receiving any unemployment benefits.

Blanchard contends that "[b]ecause of the devastating consequences inherent to injury suffered by a statutory pensioner, they are entitled to disability payments . . . regardless of an ability to work," therefore, "the right to work and receive unemployment benefits from the taxes collected as a direct result of [their] work necessarily follows as

---

[7] RCW 50.20.085. RCW 51.32.090 provides for temporary total disability awards.

[8] Clerk's Papers (CP) at 39.

[9] CP at 40.

[10] CP at 43-44.

5

a matter of law."[11] In support of his argument, Blanchard cites to an administrative law decision, In re Jerry T. Belton.[12] In Belton, the claimant fell through a roof and became quadriplegic.[13] After his injury, he retained gainful employment despite his physical limitations.[14] The key question in Belton was whether Belton's ability to obtain "gainful employment" impacted his "total disability" status for purposes of receiving his disability pension.[15] The Board of Industrial Insurance Appeals held that Belton was entitled to receive disability compensation regardless of his ability to retain gainful employment until "medical evidence establishe[d] that [Belton's] conditions causally related to his quadriplegia [were] fixed and stable."[16] Belton does not address the issue presented here.

Blanchard also argues that the statutory construction maxim "expressio unius est exclusion alterius" is "controlling in this case" and establishes that "the omission of RCW 51.08.160 from the unemployment compensation statute demonstrates that [he] is entitled to unemployment benefits."[17] But the plain language of RCW 50.20.085 prohibits a claimant from receiving unemployment benefits if they are also receiving permanent total disability benefits. And "'when the intent of the legislature is clear from

---

[11] Appellant's Br. at 16-17.

[12] In re Jerry Belton, 1987 WL 61308 (Wash. Bd. of Indus. Ins. Appeals) (Feb. 13, 1987).

[13] CP at 93.

[14] Id.

[15] CP at 92.

[16] Belton, 1987 WL 61308 at *1.

[17] Appellant's Br. at 28.

a reading of a statute, there is no room for construction.'"[18]  This canon of statutory construction is not applicable.[19]

Finally, Blanchard argues that he is entitled to attorney fees on appeal. RCW 50.32.160 provides for attorney fees if "the decision of the commissioner shall be reversed or modified."  Because we affirm the decision of the commissioner, Blanchard is not entitled to attorney fees.

Therefore, we affirm.

WE CONCUR:

---

[18] Stone v. State, Dep't of Labor & Indus., 172 Wn. App. 256, 271, 289 P.3d 720 (2012) (quoting Elliott v. Dep't of Labor & Indus., 151 Wn. App. 442, 450, 213 P.3d 44 (2009)).

[19] Additionally, Blanchard appears to challenge the trial court's denial of his motion for reconsideration.  But Blanchard merely assigns error to the trial court's denial of his motion for reconsideration without including any argument or authority specific to the motion for reconsideration.  Appellant's Br. at 7; CP at 235-36.  Therefore, we need not address the motion for reconsideration. RAP 10.3(a)(6).