182 P.3d 429 (2008)
Marcia R. MAGEE, Appellant,
v.
RITE AID, Respondent.
No. 59637-3-I.
Court of Appeals of Washington, Division 1.
March 3, 2008.
Publication Ordered April 23, 2008.
*430 Kylee T. MacIntyre, Thomas Alfred Thompson, Seattle, WA, for Appellant.
Mary E. Shima, Seattle, WA, Philip Albert Talmadge, Tukwila, WA, for Respondent Rite Aid.
John R. Wasberg, Office of the Attorney General, Seattle, WA, for Respondent Department of Labor and Industries.
BAKER, J.
¶ 1 Marcia Magee applied for workers' compensation claiming that she suffered an industrial injury by being sexually assaulted by her manager. Her claim was denied on the grounds that her written application for compensation was submitted after the expiration of the statutory time limit. The denial was upheld by the State Board of Industrial Insurance Appeals. She appeals the superior court's order affirming the decision by the board. We affirm.

I
¶ 2 Marcia Magee was a long-time employee at Rite Aid. Magee describes herself as handicapped. She suffers from autism, dyslexia and disgraphia, and falls frequently because she has trouble keeping her balance. She has great difficulty reading and writing. As a result of her disabilities, she struggled in school, and attended community college programs which required minimal paperwork. Over the years she worked at what she describes as "marginal" jobs which she could perform without having to read or write.
¶ 3 She began working at Rite Aid in 1987. There, she arranged merchandise on shelves, swept the floors, and retrieved shopping carts. Due to her disabilities, she was given no tasks involving paperwork.
¶ 4 Magee claims that beginning in October 2000, she was sexually assaulted numerous times by her manager, Al Woolford. She claims Woolford even attacked her in her apartment after she resigned from Rite Aid in May 2001.
¶ 5 After leaving Rite Aid, Magee filed a petition for an anti-harassment order against Woolford.[1] Magee's petition is handwritten and, as a result of her disabilities, is filled with grammatical and spelling errors.[2] While it is challenging to decipher, one can nevertheless glean what she alleges Woolford did. She describes Woolford attacking her sexually after store hours, and forcing her to masturbate him and have sex with him. She describes herself feeling trapped and physically inferior as a result of her infirmities. She wrote, "I had been inform by doctors to aware of his danger behavior." She concludes by stating, "I am afrid for my life." The order was granted and served on Woolford at the Rite Aid store where he worked.
*431 ¶ 6 According to Magee, Woolford attended two hearings related to the anti-harassment order, accompanied by Roy Slack, the store manager.
¶ 7 In September 2001, Magee filed suit against Woolford in King County District Court. The action was later transferred to superior court. Rite Aid was not a named party in the suit.
¶ 8 Woolford filed a counter suit, and Magee submitted an answer, affirmative defenses, and counterclaims. In her answer, she reiterated her charges against Woolford asserting, inter alia, that he assaulted her at her place of employment using his position and status as manager to assist him in doing so, that he sodomized her, and engaged in other violent and belittling sexual conduct. Magee asserted that Woolford and Rite Aid were aware of her health status and other issues leading to her vulnerability, that she had been damaged physically and emotionally by the assaults, and sought damages in compensation for her injuries.
¶ 9 In October 2001, attorney James Dickens was retained by Rite Aid to respond to a subpoena duces tecum served in the Magee-Woolford dispute. In April 2002, he received a copy of Magee's answer from her attorney. In May 2002, Magee and her attorney met with Dickens in person.
¶ 10 After the subpoena had been served, Charles Newcomer, Rite Aid's human resources manager, conducted an investigation into the matter. In his hand written records, Newcomer noted that Roy Slack, the store manager, had told him that Magee had filed an EEOC complaint. Newcomer called the EEOC and learned that Woolford was the subject of the complaint. He further noted that Magee had served a restraining order on Woolford in September 2001. According to his notes, he spoke several times with Magee. He also tried to talk to Woolford about his relationship with Magee, but Woolford refused to do so on the advice of his attorney. Less than two weeks later, Newcomer spoke to Magee again, telling her "Rite Aid would not be caught in the middle between their problems." In October 2001, Newcomer turned the investigation over to Rite Aid's counsel, James Dickens.
¶ 11 The lawsuit involving Magee and Woolford was ultimately settled out of court. While not a named party, Rite Aid participated in the settlement.
¶ 12 In January 2004, Magee filed a SIF-2 workers' compensation claim with Rite Aid. The Department of Labor and Industries denied the claim because it was made more than one year after the alleged injury occurred. The department also denied Magee's request that Rite Aid be penalized for failing to report an industrial injury to the department. Magee appealed to the Board of Industrial Insurance Appeals which affirmed the department decision denying her claim as untimely. During the litigation before the board, Magee sought access to documents retained by Dickens, who represented Rite Aid in the settlement of the lawsuit between Magee and Woolford. That request was denied by the board.
¶ 13 The board found that Magee and Woolford had sexual contact, but noted that the parties differed in their descriptions of the contact. Magee characterized the contact as assaults, while Woolford characterized it as consensual. The board then declared that the SIF-2 form Magee submitted in 2004 was the first notice Rite Aid received alleging an industrial accident. "At no time prior to that did the self-insured employer have notice or knowledge of an injury . . . sustained by Ms. Magee in her employment that resulted in treatment from a physician, . . . hospitalization, disability from work, or death as a result of the injury."
¶ 14 Magee appealed to the superior court, and both parties filed motions for summary judgment. The superior court denied Magee's motion for summary judgment, and affirmed the decision of the Board of Industrial Insurance Appeals. Given its ruling on Magee's motion, the court found it unnecessary to enter an order on Rite Aid's motion for summary judgment. The court subsequently denied Magee's motion for reconsideration.

II
¶ 15 The board's decision is prima facie correct under RCW 51.52.115, and a *432 party attacking the decision must support its challenge by a preponderance of the evidence.[3] On review, the superior court may substitute its own findings and decision for the board's only if it finds from a fair preponderance of credible evidence that the board's findings and decision are incorrect.[4] In this appeal, review is limited to examination of the record to see whether substantial evidence supports the findings made after the superior court's de novo review, and whether the court's conclusions of law flow from the findings.[5]
Magee's application
¶ 16 The purpose of the Industrial Insurance Act is to reduce to a minimum the suffering and economic loss arising from injuries and/or death occurring in the course of employment.[6] The intended beneficiary of the act is the injured worker and therefore the act's provisions should be liberally construed, with all doubts resolved in favor of the injured worker.[7]
¶ 17 RCW 51.28.050 mandates that a worker must file an application for benefits within one year of the date an injury occurred in order to receive compensation under the act.[8] Filing an application means a written document must be filed with the department or self-insured employer.[9] It is not a formal and highly technical requirement such as might apply to a pleading.[10] As long as the writing filed reasonably directs attention to the fact that an injury, with its particulars, has been sustained and that compensation is claimed, the statute has been substantially complied with.[11]
"The Workmen's Compensation Law was particularly framed to avoid legal terminology and the technicalities of law pleading. It was intended that the working people themselves could make and file these claims and give the notice of injury. The cost and expense of employing attorneys were to be avoided if possible. The act was for the benefit of the workingman and his family, not for the profession. The notice, therefore, of injury and the claim for compensation are sufficient when the facts of the injury are stated with reasonable certainty, and it is also reasonably to be inferred that a claim for compensation is being made."[[12]]
¶ 18 After noting the liberality of the courts regarding irregularities in filing compensation claims, the court in Nelson v. Department of Labor & Industries[13] held that there is no particular form of pleading required to give the State Industrial Commission jurisdiction to hear and determine a claim for compensation.[14] Anything filed with the Industrial Commission that challenges its attention, and causes it to act, is sufficient to put in motion the process of the Industrial Commission to see that compensation is paid to injured employees.[15]
¶ 19 Magee argues that both the anti-harassment order, and the answer she filed in her civil dispute with Magee satisfied the *433 minimal standard of notice laid out in Nelson.[16]
¶ 20 The anti-harassment order, she argues, was sufficient to reasonably direct Rite Aid's attention to the injuries she sustained, and to alert it that she was claiming compensation. She asserts that Woolford, as her manager at Rite Aid and her immediate superior, was the person to whom she was to report her injury under RCW 51.28.010.[17] Thus, she argues, she substantially complied with the requirements of the statute when she filed for and served the anti-harassment order.
¶ 21 She argues that the answer also satisfied the Nelson requirement. The answer stated that Woolford assaulted her at the store, using his position and status as manager to assist him in doing so, that he sodomized her, and engaged in violent sexual conduct. It stated that Magee had been damaged physically and emotionally by the assaults, and that she was seeking damages from Woolford in compensation for her injuries.
¶ 22 Rite Aid insists that the board and the superior court were correct in finding that the SIF-2 workers' compensation form filed in 2004 constituted the first written notice the company received that Magee had suffered injury, and was seeking workers' compensation.
¶ 23 In Rite Aid's view, the anti-harassment order was never drafted for the purpose of reporting an on-the-job injury, and thus does not meet the requirements of an application for workers' compensation benefits. The order, according to Rite Aid, lacked the necessary context, content, and appropriate delivery to a corporate officer to qualify as an application for benefits.
¶ 24 While Rite Aid concedes that a copy of Magee's answer in her litigation with Woolford was received by its attorney, it disputes the efficacy of the answer, as it does the anti-harassment order. It describes the answer as alleging "sexual harassment," and contends that it, too, did not contain information notifying Rite Aid that an industrial injury had occurred and that Magee was seeking workers' compensation.
¶ 25 In its order denying Magee's motion for summary judgment, the court below cited Nelson and noted the requirement that an application must include facts sufficient to establish that the worker suffered an injury, and that the worker was seeking compensation. The court ruled that Magee failed to file an application satisfying the latter requirement within the time period required by RCW 51.28.050.
¶ 26 It is significant that the communication made by the claimant in Nelson was to the review board in an existing industrial insurance claim. The court's discussion regarding the sufficiency of the notice of an injury and a compensation claim for it must be understood in that context. Nelson does not stand for the proposition that a self-insurer's awareness that an employee is suing another employee for damages arising in part from incidents occurring at a work place, is sufficient to put the employer on notice that a claim for industrial insurance compensation is being made.
¶ 27 Neither the order nor the answer named Rite Aid as a party. The order made passing reference to doctors, but did not indicate that Magee sought medical attention for injuries received as a result of the alleged assaults, nor did it state that Magee was seeking compensation from Rite Aid. Magee sought damages in her answer, but she sought them from Woolford, not from Rite Aid. The documents Magee relies upon related to her civil claims against Woolford, and none of them stated that she was seeking compensation from Rite Aid as a self-insured employer.
¶ 28 The anti-harassment order and answer are documents related to civil matters in which Rite Aid was not a named party. We recognize that the requirement for notice *434 is not formal and highly technical.[18] As long as the writing reasonably directs attention to the fact that an injury, with its particulars, has been sustained and that compensation is claimed, the statute has been substantially complied with.[19] Even if we concluded that notice of the fact of injury was given, the application must be such that a self-insured employer can reasonably infer that a claim for workers' compensation is being made.[20] The documents relied upon by Magee do not do so.
Motion to dismiss reply brief
¶ 29 Rite Aid filed a motion to strike Magee's reply brief for making inflammatory factual assertions for which there is no support in the record. This court is capable of sifting through Magee's impassioned rhetoric and isolating the relevant facts. We decline to dismiss the reply.
Attorney fees
¶ 30 Rite Aid has requested costs on appeal. RCW 51.52.130 which covers attorney fees on appeal in industrial insurance cases, makes no provision for such costs to be paid to Rite Aid. The established interpretation of RCW 51.52.130 limits the recovery of attorney fees to injured workers and beneficiaries who successfully obtain reversal or modification of board decisions, and denies any such recovery for attorney fees to employers.[21]
¶ 31 AFFIRMED.
WE CONCUR: AGID, J.
AGID, J. (concurring).
¶ 32 I agree with and have signed the majority opinion. And, while I have not verified the historic facts recited in the concurring opinion, I agree with it as well. I write separately to emphasize the need for legislative review of this aspect of the workers' compensation statute. Marcia Magee should not be deprived of compensation because, although she tried, she was unable to comply with the procedural requirements of the statute.
DWYER, J. (concurring).
¶ 33 In 1933, Herbert Hoover served the final weeks of his term as President of the United States, Adolf Hitler became the Chancellor of Germany, Philadelphia baseball fans enjoyed the unique experience of watching two home town players, Jimmie Foxx of the Athletics and Chuck Klein of the Phillies, win the batting triple crown in the American and National Leagues, respectively, and Andrew Nelson of Port Angeles, Washington was injured felling a tree while on the job at Neah Bay. Of these long-ago events, it is the fallout from Nelson's injury that comes back to haunt Marcia Magee 75 years later.
¶ 34 This case turns on a procedural question: did Magee lose her right to receive workers' compensation for her on-the-job injury because she wrongfully delayed in filing a claim? Thus, our resolution of this case does not rely on the merits of her claim. If her claim is procedurally barred, her claim is precluded regardless of whether, on their merits, her assertions regarding her injuries are true or false. Hence, in explaining my views on the issue presented, I will assume that Magee's assertions are, in fact, true.
¶ 35 Viewed in the light most favorable to Magee, the facts of this case are these: Magee is a physically and intellectually challenged, semi-literate worker. She gave her work supervisor a hand-written document (a petition for an anti-harassment protection order) stating (1) that she had been repeatedly assaulted by her work supervisor while at work and (2) that she had seen doctors as a result of this abuse. Her employer, Rite Aid, was a self-insured employer, as defined by the Industrial Insurance Act. Despite being legally required to do so, Rite Aid did not report her injury to the Department of Labor and Industries, did not provide her *435 with an SIF-2 claim form, and did not assist her in filing the claim.
¶ 36 Basing its decision on Andrew Nelson's case, Nelson v. Dep't of Labor & Indus., 9 Wash.2d 621, 115 P.2d 1014 (1941), the majority holds that, under the above-described scenario, Magee lost her right to seek workers' compensation. Remarkably, the majority is correct.
¶ 37 As the majority accurately notes, in Nelson the Supreme Court stated: "As long as the writing filed with the department reasonably directs its attention to the fact that an injury, with its particulars, has been sustained and that compensation is claimed, the [claim filing] statute has been substantially complied with." Nelson, 9 Wash.2d at 629, 115 P.2d 1014. See also Leschner v. Dep't of Labor & Indus., 27 Wash.2d 911, 924, 185 P.2d 113 (1947). Because Magee did not explicitly claim a right to workers' compensation in the document she gave to her supervisor, the majority holds, she is barred from pursuing her claim, notwithstanding the fact that the document she submitted to her work supervisor sets forth both the nature of the injurious events (work-related sexual assault) and states that she had seen "doctors" as a result of the events. Although this result strikes me as terribly unjust, it is the result existing law compels.
¶ 38 No statute defines a "claim" for Title 51 purposes. Indeed, both Nelson and Leschner dealt with the statutory predecessor to Title 51. At the time of the filing of those decisions, not all workers were subject to workers' compensation coverage (only those engaged in ultra hazardous activities were covered) and there were no "self-insured" employers. Much has changed since Nelson was injured in 1933; the law cited by the majority has not.
¶ 39 As we have previously observed, "[t]he timely filing of the worker's claim is a statutorily imposed jurisdictional limitation upon his [or her] right to receive compensation and upon the [d]epartment's authority to accept the worker's claim for benefits." Wilbur v. Dep't. of Labor & Indus., 38 Wash. App. 553, 556, 686 P.2d 509 (1984). Thus, even where the department itself fails to comply with its lawful obligation of providing notice to the worker, an untimely filing cannot be excused and the claim filing period is neither tolled nor extended. Wilbur, 38 Wash.App. at 559, 686 P.2d 509.
¶ 40 All of this strikes me as being inconsistent with the goals of our workers' compensation scheme. In adopting Title 51 RCW, the Industrial Insurance Act, the legislature made clear that the intent of the statute is to reduce to a minimum the suffering and economic loss arising from workplace injuries. Accordingly, the provisions of the title are to be liberally construed in the worker's favor. RCW 51.12.010; McIndoe v. Dep't. of Labor & Indus., 144 Wash.2d 252, 256-57, 26 P.3d 903 (2001).
¶ 41 Consistent with this view, although a writing is required for claim filing, our Supreme Court has held that the filings of injured workers should be viewed liberally. For instance, just as with claim filing, an application to reopen a claim must be in writing and provide information regarding the reason for the application. Donati v. Dep't. of Labor & Indus., 35 Wash.2d 151, 154, 211 P.2d 503 (1949). However, the department may not require that workers submit an application to reopen by using any particular form. WAC 296-14-400. Similarly, when an injured worker's physician submitted office notes recommending further treatment, the Board of Industrial Insurance Appeals held that the department should have treated the office notes as a sufficient application to reopen the claim. In re Wallace Hansen, Dkt. No. 90 1429, 1991 WL 246462 (Wash.Bd.Ind.Ins.App.1991).
¶ 42 Moreover, although the majority observes that the antiharassment document does not name Rite Aid as a party, this should be of no significance. There is no requirement that a worker identify the employer from whom benefits are sought. Indeed, the Board of Industrial Insurance Appeals has held that "a claim cannot be rejected simply because the worker failed to identify the correct employer on the application for benefits." In re Richard Eades, Dkt. No. 01 17639, 2002 WL 32303605 (Wash.Bd.Ind.Ins.App.2002).
*436 ¶ 43 Since the time of the Nelson decision, much has changed in the field of workers' compensation. Among those changes are requirements that self-insured employers report industrial injuries to the department and provide claim forms to injured workers. WAC 296-15-405(1) states that, "[w]hen notified of injury or illness, the self-insurer must provide the worker with this prenumbered form and assistance in filing a claim." In addition, a separate regulation requires that "[e]very self-insurer must . . . [i]mmediately provide a Self-Insurer Accident Report (SIF-2) . . . form to every worker who makes a request, or upon the self-insurer's first knowledge of the existence of an industrial injury . . ., whichever occurs first." WAC 296-15-320(2) (emphasis added).
¶ 44 Here, Magee notified the employer of her injury and her resort to "doctors." In response, Rite Aid did nothing. Rite Aid's inaction was contrary to its legal obligations as set forth above.
¶ 45 Similarly, a statute provides that whenever any injury occurs to a worker, the worker has a duty to report the injury to the worker's employer or supervisor, and the employer has a duty to report such injury to the department if the worker has received treatment from a physician. RCW 51.28.010(1). Magee complied with this statutory obligation; Rite Aid did not.
¶ 46 Thus, upon learning of its employee's work-related injuries and resort to medical attention, Rite Aid did not take any of the following measures it was legally required to take: (1) Rite Aid did not report the occurrence to the department; (2) Rite Aid did not give Magee the SIF-2 form; and (3) Rite Aid did not assist Magee in filing her claim.
¶ 47 Despite not adhering to its legal obligations, Rite Aid now comes to this court seeking relief on the basis of Magee's untimely claim filing. Such hubris should not be rewarded. Unfortunately, the law requires that it be.
¶ 48 Notwithstanding the many changes to workers' compensation law that have taken place over the past seven decades, the legislature has never seen fit to delineate the necessary contents of "a claim."[22] Thus, we must adhere to the definition provided by the Supreme Court in Nelson.
¶ 49 Obviously, the Supreme Court can choose to modify the rule it set forth in Nelson. Equally obviously, the legislature can choose to provide a statutory definition. However, we have no such latitude.
¶ 50 Given the purposes of the Industrial Insurance Act and the malfeasance of the self-insured employer in this case, Magee should have a remedy. But the majority correctly concludes that she does not.
¶ 51 Thus, with a reluctance outweighed only by my obligation to the law, I concur in the majority opinion.
NOTES
[1] In addition to the anti-harassment order, Magee filed a complaint with the Equal Employment Opportunity Commission (EEOC) alleging sexual harassment, but not sexual assault. Rite Aid received a copy of the EEOC claim. She also applied for benefits under the Crime Victims' Compensation Program. Ultimately, nothing came of either claim.
[2] Her spoken testimony, in contrast, is far more articulate.
[3] Ravsten v. Dep't of Labor & Indus., 108 Wash.2d 143, 146, 736 P.2d 265 (1987).
[4] McClelland v. ITT Rayonier, Inc., 65 Wash.App. 386, 390, 828 P.2d 1138 (1992).
[5] Young v. Dep't of Labor & Indus., 81 Wash.App. 123, 128, 913 P.2d 402 (1996).
[6] RCW 51.12.010.
[7] RCW 51.12.010; Doty v. Town of South Prairie, 155 Wash.2d 527, 531, 120 P.3d 941 (2005); McIndoe v. Dep't of Labor & Indus., 144 Wash.2d 252, 256-57, 26 P.3d 903 (2001).
[8] Wheaton v. Dep't of Labor & Indus., 40 Wash.2d 56, 58, 240 P.2d 567 (1952).
[9] Nelson v. Dep't of Labor & Indus., 9 Wash.2d 621, 629, 115 P.2d 1014 (1941).
[10] Nelson, 9 Wash.2d at 629, 115 P.2d 1014.
[11] Nelson, 9 Wash.2d at 629, 115 P.2d 1014.
[12] Nelson, 9 Wash.2d at 629, 115 P.2d 1014 (quoting Kaplan v. Kaplan Knitting Mills, Inc., 248 N.Y. 10, 161 N.E. 204 (1928)).
[13] 9 Wash.2d 621, 629, 115 P.2d 1014 (1941).
[14] Nelson, 9 Wash.2d at 630, 115 P.2d 1014 (quoting Steffens Ice Cream Co. v. Jarvis, 132 Okla. 300, 270 P. 1103 (1928)).
[15] Nelson, 9 Wash.2d at 630, 115 P.2d 1014 (quoting Steffens Ice Cream Co., 132 Okla. 300, 270 P. 1103).
[16] Nelson, 9 Wash.2d at 629, 115 P.2d 1014.
[17] RCW 51.28.010 states that whenever any accident occurs to any worker it shall be the duty of such worker to forthwith report such accident to his or her employer, superintendent, or supervisor in charge of the work.
[18] Nelson, 9 Wash.2d at 629, 115 P.2d 1014.
[19] Nelson, 9 Wash.2d at 629, 115 P.2d 1014.
[20] Nelson, 9 Wash.2d at 629, 115 P.2d 1014 (quoting Kaplan, 248 N.Y. 10, 161 N.E. 204).
[21] Seattle Sch. Dist. No. 1 v. Dep't of Labor & Indus., 116 Wash.2d 352, 361-362, 804 P.2d 621 (1991).
[22] "[T]he legislature is presumed to know the existing state of the case law in those areas in which it is legislating." Woodson v. State, 95 Wash.2d 257, 262, 623 P.2d 683 (1980) (citing State v. Fenter, 89 Wash.2d 57, 62, 569 P.2d 67 (1977)). Thus, where the legislature does not amend a statute following its interpretation by the Supreme Court, we must assume that the legislature has acquiesced in that decision. Soproni v. Polygon Apartment Partners, 137 Wash.2d 319, 327 n. 3, 971 P.2d 500 (1999).