[No. 65861-1-I.   Division One.   January 17, 2012.]

Marcia R. Magee, *Appellant*, v. Rite Aid, *Respondent*.

*Kylee MacIntyre Redman* (of *The Walthew Law Firm*), for appellant.

*Mary E. Shima* (of *Reeve Shima PC*) and *Philip A. Talmadge* (of *Talmadge/Fitzpatrick*), for respondent.

¶1 SCHINDLER, J. — Marcia R. Magee appeals from a 2010 decision and order of the Board of Industrial Insurance Appeals (Board) and the order denying her motion to vacate. The Board ruled that even if it erroneously exceeded the scope of review in previously deciding that Magee's claim did not constitute an occupational disease, because Magee did not challenge that determination in her appeal of the 2006 "Decision and Order," that decision was valid and binding. We affirm the Board's decision and order and the order denying Magee's motion to vacate the conclusion in the Board's 2006 Decision and Order that the claim did not constitute an occupational disease.

## FACTS

*2004 Workers' Compensation Claim*

¶2 Marcia Magee began working at Rite Aid in 1987. According to Magee, she suffers from autism, dyslexia, and dysgraphia. In May 2001, Magee quit her job.

¶3 In September 2001, Magee filed a petition for an antiharassment order against her former supervisor at Rite Aid, Alan Woolford. Magee also filed a sexual harassment complaint in 2001 with the Equal Employment Opportunity Commission.[1]

---

[1] In addition, in August 2001, Magee filed a complaint with the Bellevue Police Department. Following an investigation, the police concluded Magee "never physically attempted to stop the sex acts from occurring and she never verbalized her unwillingness except to tell him that the sex was not good and that he had caused medical problems with his rough ways." No charges were filed.

¶4 On January 23, 2004, Magee filed an application for workers' compensation benefits. An industrial injury claim must be filed "within one year after the day upon which the injury occurred." RCW 51.28.050. An occupational disease claim must be filed "within two years following the date the worker had written notice from a physician or a licensed advanced registered nurse practitioner." RCW 51.28.055(1).

¶5 Magee asserted she was entitled to benefits for sexual assaults that occurred in 2000 and 2001. The Department of Labor and Industries (Department) denied the claim because it was not filed "within one year after the day upon which the alleged injury occurred."

*Appeal to the Board*

¶6 Magee appealed the Department's denial of her claim for benefits to the Board. The industrial appeals judge (IAJ) conducted a telephone conference with the parties to identify the issues. The IAJ entered an order identifying the issues as follows: (1) "Did the claimant file the application for benefits within one year of the date of injury?" and (2) "Did the self-insured employer fail to file the claim and/or report an on-the-job injury?"

¶7 A number of witnesses testified at the hearing about when Magee notified Rite Aid about her claim for workers' compensation benefits. Rite Aid witnesses testified that Magee did not mention the alleged sexual assaults by Woolford in her resignation letter and that Rite Aid did not receive notice of any job-related injury until Magee filed the workers' compensation claim in 2004.

¶8 During Magee's testimony, Rite Aid objected to any testimony about the alleged sexual assaults because the question of occupational disease was not an issue before the IAJ and the testimony was not relevant to the question of whether the industrial injury claim was timely filed. Magee's attorney argued that the testimony was relevant and admissible because Magee was entitled to benefits for

both an industrial injury and an occupational disease. Magee's attorney argued, in pertinent part:

> We're not claiming just industrial injury. It also can be found to be an occupational disease for the mental disability that she suffered in this matter.
>
> . . . And what we're trying to establish in our record is that there was a repeated physical abuse of this woman from October up until June, and then she filed a claim. And our argument is that those assaults either rose to the level of an occupational disease or an industrial injury and that the Department needs to pass on both of those issues. We're not just precluding one.

The IAJ overruled Rite Aid's objection and allowed Magee to testify at length about the sexual assaults.

¶9 Following the hearing, the IAJ issued a proposed decision and order affirming denial of the workers' compensation claim. The IAJ concluded that the sexual assaults constituted an industrial injury, but Magee did not file a claim for an industrial injury within the one-year statutory deadline. The IAJ also concluded that as a matter of law, the sexual assaults did not constitute an occupational disease under RCW 51.08.140.

¶10 The proposed decision and order addresses Magee's claim that she was entitled to benefits as an occupational disease. The IAJ identifies one of the issues as follows:

> Did the sexual assaults on Ms. Magee by her supervisor at her place of employment over a period of months arise naturally and proximately out of distinctive conditions of her employment so as to constitute an occupational disease within the meaning of RCW 51.08.140?

¶11 The proposed decision and order then addresses the authority of the Board to decide the question of whether the sexual assaults constitute an occupational disease:

## II. OCCUPATIONAL DISEASE
### A. AUTHORITY OF BOARD TO DETERMINE ISSUE

The Board has ruled that the issue of occupational disease properly is before the Board even though the Department's only stated reason for rejecting the claim was that it did not constitute an industrial injury. In re Susanne Ryan, BIIA Dec., 46,094 (1977). Where the Department has allowed a claim as an industrial injury and the employer has appealed, the Board has the authority to determine whether the claim should have been allowed as an occupational disease. In re Joe Callender, Sr., BIIA Dec., 89 0823 (1990). . . .

. . . Ms. Magee suffered a series of assaults, approximately 15 during her employment and at her workplace. These occurred over a period of three months. The self-insured employer ultimately had sufficient knowledge of the multiple assaults, and so did the Department. The self-insured employer was not correct in referring to the first assault in October, 2000 as the date "the" industrial injury occurred.

Too, Ms. Magee has not repetitively insisted that all of her mental and physical conditions stemmed from that one assault. She has alleged a series of assaults over a three-month period. That is sufficiently similar to a repetitive injury over time to require consideration of the issue. It was the self-insured employer which attempted to narrow the issue in its initial request to deny the claim as not timely filed as an industrial injury. The [In re Roy]Benson[, BIIA Dec., 53,294 (1980)] facts do not apply to deprive the Board of jurisdiction.

### B. REQUIREMENTS FOR AN OCCUPATIONAL DISEASE

An occupational disease must arise naturally and proximately out of distinctive conditions of employment. RCW 51.08.140. Dennis[ v. Dep't of Labor & Indus., 109 Wn.2d 467, 745 P.2d 1295 (1987)]. Sometimes, a claim could be filed for each of a series of events or as an occupational disease. Sharon Baxter suffered a series of needle pricks while employed as a dental assistant. The

Board held that the condition had not developed to the extent that it was disabling or required treatment until later, and the need for such treatment after this series of events allowed the condition to be considered an occupational disease. Ms. Baxter worked in a profession in which the use of needles was a factor of her employment distinctive from the exposure to needles in the general workplace and the exposure of the general public, so her exposure to needles constituted a distinctive condition of her employment. In re Sharon Baxter, BIIA Dec., 92 5897 (1994).

Ms. Magee's exposure to sexual assault at Rite Aid does not meet the test for being a distinctive condition of employment. There was nothing in her workplace that distinguished her vulnerability to sexual assault there from the vulnerability of workers to such assaults in all employments in general or in everyday life. Thereby, Mr. Woolford's series of sexual assaults on Ms. Magee from October, 2000 through January, 2001 cannot constitute an occupational disease. Dennis.

¶12 The conclusions of law in the IAJ proposed decision and order state, in pertinent part:

5. The series of Mr. Woolford's physical and sexual assaults on Marcia R. Magee at the downtown Bellevue, Washington[,] Rite Aid Store between October, 2000 and January, 2001 did not constitute "distinctive conditions of employment" within the meaning of Dennis v. Dep't of Labor & Indus., 109 Wn.2d 467, 745 P.2d 1295 (1987).

6. The series of Mr. Woolford's physical and sexual assaults on Marcia R. Magee at the downtown Bellevue, Washington[,] Rite Aid Store between October, 2000 and January, 2001 did not constitute an occupational disease within the meaning of RCW 51.0[8].140.

¶13 Magee filed a petition for review of the proposed decision and order with the Board. In the petition for review, Magee states that the issue is whether she "put her employer, Rite Aid, on notice that she had suffered an injury or occupational disease."

¶14 After filing the petition for review, Magee and Rite Aid later entered into a stipulation "regarding the scope of the Board's review." The stipulation states that the issue on appeal is limited to timeliness and "any determinations regarding whether the alleged events constituted an industrial injury or occupational disease were left, by the Department, for its consideration at a later date and time, but would not be considered as part of these appeals."

¶15 On August 1, 2006, the Board issued a decision and order. The Board denied Magee's claim for benefits as an industrial injury because the claim was not filed within the statutory deadline. The Board also concluded that her claim did not constitute an occupational disease under RCW 51.08.140. The findings in the 2006 Decision and Order state, in pertinent part:

> Insofar as the contact with Mr. Woolford was the basis for Ms. Magee's claim, her filing is not timely. The time allowed for filing and the consequences of an untimely filing are codified in RCW 51.28.050[,] which states:

> > No application shall be valid or claim thereunder enforceable unless filed within one year after the day upon which the injury occurred or the rights of dependents or beneficiaries accrued, except as provided in RCW 51.28.055.

> "The timely filing of the worker's claim is a statutorily imposed jurisdictional limitation upon his right to receive compensation and upon the Department's authority to accept the worker's claim for benefits." *Wilbur v. Department of Labor & Indus.*, 38 Wn. App. 553[, 556, 686 P.2d 509] (1984), *Rev. denied*, 103 Wn.2d 1016 (1985), [citing] *Wheaton v. Department of Labor* [&] *Indus.*, 40 Wn.2d 56[, 240 P.2d 567] (1952).

> . . . .

> Finally, we turn to the claimant's argument that she may have a claim for an occupational disease. An occupational

disease is defined in RCW 51.08.140 as a disease or infection that arises naturally and proximately out of employment under the mandatory or elective adoption provisions of this title. A series of assaults inflicted upon a worker does not constitute an occupational disease.

The conclusions of law in the Decision and Order state, in pertinent part:

1. The Board of Industrial Insurance Appeals has jurisdiction over the parties to and the subject matter of these appeals.

2. The claimant's application for benefits alleging an industrial injury as a result of sexual contact with her immediate supervisor that occurred between October 2000 and June 2001, filed on January 23, 2004, was not timely within the meaning of RCW 51.28.055.

3. The sexual contact that the claimant had with her immediate supervisor between October 2000 and June 2001, does not constitute an occupational disease within the meaning of RCW 51.08.140.

4. The self-insured employer, Rite Aid, did not violate the terms of RCW 51.2[8].025 by failing to report an injury or occupational disease to the Department prior to January 23, 2004.

5. The Department order dated June 3, 2004, in which the Department denied the claimant's request for a penalty against the self-insured employer, is correct and is affirmed. (Docket No. 04 20029).

6. The Department order dated July 9, 2004, in which the Department denied the claim because it was not timely filed, is correct and is affirmed. (Docket No. 04 19326).

*Appeal of 2006 Decision and Order*

¶16 Magee appealed the 2006 Decision and Order of the Board to superior court and challenged "the whole and each and every part of" the Board's decision. However, in her motion for summary judgment, Magee argued only that the Board erred in denying her claim for benefits for an industrial injury as untimely. The superior court affirmed

the Department's decision. On appeal, we affirmed the 2006 Decision and Order of the Board denying Magee's claim for benefits. *Magee v. Rite Aid*, 144 Wn. App. 1, 182 P.3d 429 (2008). The Supreme Court denied the petition for review. *Magee v. Rite Aid*, 164 Wn.2d 1036, 197 P.3d 1185 (2008).

*2010 Decision and Order and Order Denying Motion To Vacate*

¶17 On December 9, 2008, Magee asked the Department to determine whether she was entitled to benefits as an occupational disease for sexual assaults in 2000 and 2001. Magee claimed that because the parties entered into a stipulation limiting the issues in the previous administrative appeal, the Board did not have the authority to conclude that the sexual assaults did not constitute an occupational disease.

¶18 On February 6, 2009, the Department denied Magee's request, stating that because the Board's conclusion in the 2006 Decision and Order was "not reversed or vacated by any later court decision, it is now a final and binding conclusion that the department must follow."

¶19 Magee appealed the decision to the Board. Magee also filed a motion to vacate the conclusion of law in the 2006 Decision and Order that the sexual assaults do not constitute an occupational disease under the statute. Magee argued that the conclusion of law was void because the Board did not have jurisdiction to decide the question of occupational disease.

¶20 On November 9, 2009, the IAJ issued a proposed decision and order. In the proposed order and decision, the IAJ concluded the Board's 2006 Decision and Order was a final and binding decision, and affirmed the Department's decision.

The Conclusion of Law No. 3 as contained in the Board's Decision and Order dated August 1, 2006 is final and binding

and becomes res judicata as to the parties to this appeal, pursuant to the provisions of *Marley v. Department of Labor & Indus.*, 125 Wn.2d 533[, 886 P.2d 189] (1994) and *In re Orena A. Houle*, BIIA Dec., 00 11628 (2001).

¶21 Magee appealed to the Board. In an order denying petition for review, entered on December 29, 2009, the Board denied Magee's appeal and adopted the proposed decision and order of the IAJ as the decision and order of the Board. In an order dated January 20, 2010, the Board denied Magee's motion to vacate the conclusion of law in the 2006 Decision and Order rejecting her claim as an occupational disease. Assuming the conclusion of law exceeded the scope of review, the Board ruled that the 2006 Decision and Order was final and binding because Magee did not "address the scope of review error in the court of appeals." The "Order Denying Motion to Vacate" states, in pertinent part:

> The claimant argues that the Board exceeded its scope of review in entering this conclusion of law denying the claim as an occupational disease, when the issue before the Board was whether the worker filed a timely application for an industrial injury claim. Accepting that the conclusion of law exceeded our scope of review, the consideration becomes whether such an error is correctable at this stage of proceedings. It clearly is not. When the Board exceeds its scope of review, it has committed an error of law. *In re Orena Houle*, BIIA Dec., 00 11628 (2001). Entering a conclusion of law beyond our scope of review is not a jurisdictional error making the conclusion void. *Marley v. Department of Labor & Indus.*, 125 Wn.2d 533 (1994). An error of law must be addressed in an appeal, it may not be corrected through a motion filed under CR 60. *Burlingame v. Consolidated Mines and Smelting Co.*, 106 Wn.2d 328[, 722 P.2d 67] (1986). The erroneous conclusion should have been addressed in the subsequent court appeals. The failure to adequately address the scope of review error in the court appeals is dispositive of the issue. CR 60 does not provide an avenue for relief from the offending conclusion of law after the appellate remedies have been exhausted.

¶22 Magee filed an appeal in superior court. Rite Aid and Magee filed cross motions for summary judgment.

Magee argued the Board did not have jurisdiction to determine whether sexual assaults meet the statutory definition for an occupational disease. The Department argued that because Magee did not appeal the determination that her claim did not constitute an occupational disease, the 2006 Decision and Order is a final and binding decision.

¶23 The superior court affirmed the decision and order denying Magee's request to determine whether her claim constitutes an occupational disease, and the order denying her motion to vacate the conclusion of law in the 2006 Decision and Order. The order states, in pertinent part:

> This Order is based upon the decisions in *Marley*, 125 Wn.2d 533 (1994) and *In re Houle*, 2001 WL 395827[, 2001 WA Wrk. Comp. LEXIS 26] (BIIA). The Board's decision in August 2006 may well have exceeded the scope of review as to Conclusion of Law [(COL)] # 3 but the Board had subject matter jurisdiction to decide/reach conclusions on the issue of occupational disease. When Magee failed to appeal COL #3, it became final.

## ANALYSIS

¶24 Magee challenges the conclusion in the 2006 Decision and Order that her claim constitutes an occupational disease. Magee asserts that because the Board did not have subject matter jurisdiction, that determination is void. Magee contends the Board had the authority to address only whether her industrial injury claim was untimely.

¶25 Subject matter jurisdiction is a question of law that we review de novo. *Dougherty v. Dep't of Labor & Indus.*, 150 Wn.2d 310, 314, 76 P.3d 1183 (2003). The court in *Marley*, 125 Wn.2d 533 held that the doctrine of claim preclusion applies to a final judgment by the Department, and in order to prove the final decision is void, "a party must show that the Department lacked either personal or subject matter jurisdiction." *Marley*, 125 Wn.2d at 537.

¶26 In *Marley*, the Department concluded that Marley was not entitled to benefits because she and her husband

were separated at the time of his death. *Marley*, 125 Wn.2d at 536. The Board affirmed the Department's decision. Nearly seven years later, Marley appealed. Marley argued that the Board did not have subject matter jurisdiction to decide whether she was entitled to benefits and, therefore, the decision and order was void. *Marley*, 125 Wn.2d at 536. The Supreme Court concluded that although the Department may have made an erroneous decision, because the Department "has subject matter jurisdiction to adjudicate all claims for workers' compensation" and Marley did not appeal, the decision and order was valid and binding. *Marley*, 125 Wn.2d at 542-43.

¶27 The court held that a tribunal lacks subject matter jurisdiction only when it attempts to decide a type of controversy over which it has no authority to adjudicate. *Marley*, 125 Wn.2d at 539.

> "A judgment may properly be rendered against a party only if the court has authority to adjudicate the *type of controversy* involved in the action." (Italics ours.) We italicize the phrase "type of controversy" to emphasize its importance. A court or agency does not lack subject matter jurisdiction solely because it may lack authority to enter a given order.
>
> The term "subject matter jurisdiction" is often confused with a court's "authority" to rule in a particular manner. This has led to improvident and inconsistent use of the term.
>
> . . . .
>
> . . . Courts do not lose subject matter jurisdiction merely by interpreting the law erroneously. If the phrase is to maintain its rightfully sweeping definition, it must not be reduced to signifying that a court has acted without error.

*Marley*, 125 Wn.2d at 539[2] (quoting RESTATEMENT (SECOND) OF JUDGMENTS § 11 (1982); *In re Marriage of Major*, 71 Wn. App. 531, 534-35, 859 P.2d 1262 (1993)).

¶28 The critical question is whether the type of controversy is within the subject matter jurisdiction of the Board.

---

[2] (Alterations in original.)

*Marley*, 125 Wn.2d at 539; *see also Cole v. Harveyland, LLC*, 163 Wn. App. 199, 258 P.3d 70 (2011). "Type of controversy" means the general category without regard to the particular facts of the case and refers to the nature of a case or the relief sought. *Marley*, 125 Wn.2d at 539; *Dougherty*, 150 Wn.2d at 317. If the type of controversy is within the subject matter jurisdiction of the Department, " 'then all other defects or errors go to something other than subject matter jurisdiction.' " *Marley*, 125 Wn.2d at 539 (quoting Robert J. Martineau, *Subject Matter Jurisdiction as New Issue on Appeal: Reining in an Unruly Horse*, 1988 B.Y.U. L. Rev. 1, 28). Where the Department has both personal and subject matter jurisdiction over the claim, even an error in the Department's unappealed order does not render it void. *Kingery v. Dep't of Labor & Indus.*, 132 Wn.2d 162, 170, 937 P.2d 565 (1997).[3]

¶29 Under the Industrial Insurance Act (IIA), Title 51 RCW, the Department has broad authority to decide claims for workers' compensation, including claims for industrial injuries and occupational disease. RCW 51.04.020; *Marley*, 125 Wn.2d at 542. When a claimant appeals the Department's order denying a claim for benefits, the IAJ issues a proposed order and decision that includes findings and conclusions based on the record. RCW 51.52.104. A party can file a petition for review of the proposed order and decision to the Board. RCW 51.52.104. The appealing party "shall be deemed to have waived all objections or irregularities not specifically set forth" in the petition for review to the Board. RCW 51.52.104.

¶30 The Board has the authority to review the record, enter findings of fact and conclusions of law as to each contested issue of fact and law, and issue a final order. RCW 51.52.106. A party may appeal the final order of the Board

---

[3] Magee does not contend the Board did not have personal jurisdiction.

to superior court. RCW 51.52.110;[4] *Marley*, 125 Wn.2d at 538. But where, as here, a claimant does not appeal an adverse ruling, the ruling is treated as the final decision of the Department. RCW 51.52.110; *Marley*, 125 Wn.2d at 537 n.2.

¶31 Magee relies on *Hanquet v. Department of Labor & Industries*, 75 Wn. App. 657, 879 P.2d 326 (1994) to argue that the Board did not have subject matter jurisdiction to decide whether her claim qualified as an occupational disease. But in *Hanquet*, we were not asked to decide subject matter jurisdiction, and the opinion does not address either subject matter jurisdiction or type of controversy.[5]

¶32 In *Hanquet*, the Department denied Hanquet's claim for workers' compensation on the ground that he was a sole proprietor. *Hanquet*, 75 Wn. App. at 660. Hanquet appealed. The sole issue addressed at the hearing before the IAJ was whether Hanquet was a "worker" under RCW 51.08.180 or qualified as a "sole proprietor" under RCW 51.12.020(5). *Hanquet*, 75 Wn. App. at 660. Nonetheless, in the appeal from the IAJ decision, the Board denied Hanquet's claim based on a different ground—the "private home" exemption, a "highly fact-specific" issue neither party had raised or addressed. *Hanquet*, 75 Wn. App. at 660-63.

¶33 On appeal, Hanquet argued that the Board's decision exceeded the scope of review. *Hanquet*, 75 Wn. App. at 661. We concluded that if Hanquet had notice that a different statutory exclusion would be considered as a ground for denying coverage, "he might have been able to present additional evidence or argument bearing on the question and the outcome may well have been different." *Hanquet*, 75 Wn. App. at 662-63. We held that the superior court decision affirming the Board "on an issue not properly

---

[4] Likewise, the superior court reviews the record before the Board. RCW 51.52.115.

[5] Likewise, *Lenk v. Department of Labor & Industries*, 3 Wn. App. 977, 978-81, 478 P.2d 761 (1970) is a direct appeal challenging the Board's scope of review.

before the Board . . . exceeded the proper scope of review."
*Hanquet*, 75 Wn. App. at 663.

¶34 Here, unlike *Hanquet*, the notice of appeal of the proposed decision and order that Magee filed with the Board states that the issue is whether she "put her employer, Rite Aid, on notice that she had suffered an injury or occupational disease." Although Magee and Rite Aid entered into a stipulation seeking to limit the scope of review in the appeal to the Board, parties cannot stipulate to jurisdiction or create limitations on review. *Barnett v. Hicks*, 119 Wn.2d 151, 161, 829 P.2d 1087 (1992) (citing *Folsom v. County of Spokane*, 111 Wn.2d 256, 261-62, 759 P.2d 1196 (1988)). Subject matter jurisdiction does not turn on an agreement or stipulation; either the court has subject matter jurisdiction or it does not. *Williams v. Leone & Keeble, Inc.*, 171 Wn.2d 726, 730, 254 P.3d 818 (2011).

¶35 Magee also claims that the superior court erred in relying on a significant decision published by the Board, *Houle*, BIIA Dec. 00 11628. We disagree. While not binding, significant decisions published by the Board are persuasive authority. *O'Keefe v. Dep't of Labor & Indus.*, 126 Wn. App. 760, 766, 109 P.3d 484 (2005).

¶36 In *Houle*, the Board followed the decision in *Marley*. The Board concluded that it exceeded the scope of review in deciding an issue that was not addressed by the Department. *Houle*, BIIA Dec. 00 11628, at 3.[6] However, because the decision was affirmed in an appeal to superior court, the Board ruled that the decision was a final and binding order and the claimant could not, years later, challenge the order denying the claim. *Houle*, BIIA Dec. 00 11628, at 2, 7.

---

[6] Scope of review serves to limit the issues the Board has authority to consider, restricting the Board to those matters already passed upon by the Department of Labor and Industries. However, we believe *Marley* supports the conclusion that the scope of review is not jurisdictional, per se.

When the Board exceeds the scope of its review, it commits an error of law by passing on an issue or issues not properly before it.

*Houle*, BIIA Dec. 00 11628, at 5-6.

¶37 Here, as in *Marley*, we hold that the question of whether Magee was entitled to workers' compensation benefits for an occupational disease is the type of controversy the Board is authorized to decide under the IIA. Assuming the Board exceeded the scope of review by addressing whether Magee's claim constituted an occupational disease, because Magee did not challenge that conclusion of law in the appeal of the 2006 Decision and Order, that decision is final and binding.

¶38 We affirm the Board's "Order Denying Petition for Review" and the Order Denying Motion to Vacate.[7]

LEACH, A.C.J., and BECKER, J., concur.

---

[7] We reject Rite Aid's request to impose sanctions for filing a frivolous appeal. *Streater v. White*, 26 Wn. App. 430, 434-35, 613 P.2d 187 (1980).